**Harry W. SMITH, Personal Representative of the Estate of Belvia M. Smith, Deceased, and Beatrice Christopher, Respondents,**

**v.**

**Geneva SNODGRASS, Milton Smith, Ella Roberson, Belvia June Martin, Kathern Miller and Allen Smith, Appellants.**

No. 15342.

Missouri Court of Appeals,
Southern District,
Division One.

March 24, 1988.

John Z. Williams, Williams, Smallwood & Crump, Rolla, for appellants.

Melvin E. Carnahan, Carnahan, Carnahan & Hickle, Rolla, for respondent Beatrice Christopher.

HOLSTEIN, Judge.

Harry W. Smith is personal representative of the Estate of Belvia M. Smith, Deceased. He and Beatrice Christopher are two of ten children and heirs of the deceased. The appellants are six of Belvia M. Smith's children and heirs. The appeal arises from a petition filed by Harry in the Probate Division of the Circuit Court of Phelps County asking for approval of a compromise and settlement of a balance due on a promissory note made by Beatrice and payable to the decedent. Following a hearing, the probate division entered an order approving the compromise. Appellants attack the order claiming there was no substantial evidence to support the compromise and that the compromise is against the weight of the evidence because the proponents of the compromise failed to show that the settlement was in the best interest of the estate and that the compromise was fair and reasonable. We affirm.

■ Preliminary to a discussion of the point raised on appeal, we note that respondents have filed a motion to dismiss the appeal claiming that an order approving a compromise of a debt due an estate is not one of the orders or judgments in a probate proceeding from which an aggrieved party may appeal. While the motion to dismiss the appeal has been withdrawn by respondents, this court has a duty to inquire and determine, *ex mero motu*, whether a final, appealable judgment has been rendered by the trial court, and the appeal must be dismissed, *sua sponte*, if finality is lacking. *Maurer v. Clark*, 727 S.W.2d 210 (Mo.App. 1987). Section 472.160 [1] specifies fourteen cases in which an interested, aggrieved person may appeal from an order, judgment, or decree of the probate division of the circuit court. Nothing in that statute specifically authorizes appeals from an order approving a compromise of debts due an estate pursuant to § 473.277. However, § 472.160.1(14) provides that any interested person aggrieved by the order, judgment, or decree of the probate division of the circuit court may appeal "in all other cases where there is a final order or judgment of the probate division of the circuit court under this code except orders admitting to or rejecting wills from probate."

This court has previously stated that § 472.160 contemplates that as to any specific proceeding where the rights of all parties and all issues are fully adjudicated and disposed of, an order is appealable. In *Re Estate of Erwin*, 611 S.W.2d 564, 567

---

1. Unless otherwise indicated, all references to statutes are to RSMo, 1986, and all references to    rules are to Missouri Rules of Court, V.A.M.R.

(Mo.App.1981); see also *In Re Estate of Ritter*, 510 S.W.2d 188, 189 (Mo.App.1974).

*In Re Hutton's Estate*, 92 Mo.App. 132 (1902) is the only reported case in this state relating to the finality of an order approving a compromise. In the *Hutton* case, the administrator had sought to compromise certain notes owing to the estate of the decedent. The probate court had approved the compromise. The heirs were not notified of the proceedings taken to effect the compromise. Under those circumstances, it was held that the order approving the compromise was not final. The court stated at pp. 141–142:

> "... [I]f [the compromise is] conclusive in favor of the administrator, then there was no time when the heirs of said estate could have contested it. One of the objects of the law in providing the notice is, that the heirs may have an opportunity to appeal and question any item of credit claimed by or previously allowed to the administrator in his previous ... settlement."

■ In the case now before the court, the heirs were notified of the petition to compromise and settle the amount due the estate from Beatrice Christopher. The apparent purpose of § 473.277 is to provide a mechanism for expeditious compromise of claims held by an estate. If the personal representative were required to wait until the final settlement of the estate is approved and order of distribution made to effect the compromise, the purpose of the statute would be thwarted. The record on appeal reflects that there are no persons, other than the heirs, having a property right or claim against the estate which in this proceeding would qualify them as "interested persons" as defined in § 472.010(15). Where, as here, all interested persons are notified of the proceeding to approve the compromise and the order adjudicates all issues presented in the petition to compromise and settle the claim, such order is final and appealable.

■ Turning to the point on appeal, § 473.277 provides in part as follows:

> When it appears for the best interest of the estate, the executor or administrator, on order of the court, may effect a fair and reasonable compromise with any debtor or other obligor, or extend, renew or in any manner modify the terms of any obligation owing to the estate.

Thus, the statutory standards for determining whether or not the probate division of the circuit court could approve the compromise are whether the compromise is in the best interest of the estate and whether it is a fair and reasonable compromise. Worded differently, the representative must act with fidelity and prudence in reaching the compromise. *Jacobs v. Jacobs*, 99 Mo. 427, 12 S.W. 457, 459 (1889).

Whether a particular compromise is in the best interest of the estate and is fair and reasonable are questions of fact. *Basler, Estate of v. Delassus*, 690 S.W.2d 791, 797 (Mo. banc 1985). In assessing the propriety of a decision made by the probate division on fact questions, we are required to affirm that decision, as in any court-tried case, unless there is no substantial evidence to support the result, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Johnston v. Estate of Phillips*, 706 S.W.2d 554, 555 (Mo.App. 1986). We must give due regard to the opportunity of the trial court to adjudge the credibility of witnesses. Rule 73.01(c)(2). Accordingly, the statement of facts which follows treats the evidence in a light most favorable to the judgment of the trial court and defers to the judgment of the trial court on matters in which the evidence is in conflict. *Trenton Trust Co. v. Western Sur. Co.*, 599 S.W.2d 481, 483 (Mo. banc 1980).

Belvia M. Smith died on March 23, 1984. She was the mother of ten children: Beatrice Christopher, Geneva Snodgrass, Milton Smith, Ella Roberson, Belvia June Martin, Harry Smith, Wilma Koch, Kathern Miller, Fern Miller, and Allen Smith. Belvia M. Smith left her entire estate to her ten children. Among the assets of the estate is a note of Beatrice in the original principal amount of $72,500 dated August 30, 1974, payable five years thereafter, and

bearing interest at 7% per annum. That note is secured by a deed of trust on certain real property in Gasconade County. A dispute arose between Beatrice and the estate over the amount due on the note. The dispute resulted in a declaratory judgment action and, ultimately, a judgment in Phelps County Circuit Court declaring the correct balance due on the note was $127,-563.77 as of April 23, 1986, and that the deed of trust was valid. That judgment was appealed. The appeal was pending at the time the petition to compromise the debt was filed in the probate division of the circuit court.[2]

Under the compromise settlement offered to the probate division, Beatrice was to pay $60,000 in full payment and satisfaction of the note. In return, she was to obtain a full release and satisfaction of the deed of trust securing payment of the note. Following a hearing on June 17, 1987, the probate division entered its order approving the settlement.

In addition to the facts already cited, the evidence at the hearing indicated that Beatrice believed that the actual amount due on the note was in the neighborhood of $41,725 principal. The evidence regarding her financial situation was that she is a married retiree sixty-four years of age. Although she was married at the time of the execution of the note and deed of trust, Beatrice's husband did not join with her in the execution of the documents. Her only independent income is $1,000 to $2,000 a year from a craft business. She receives approximately $393 per month social security. Beatrice said she had no cash assets available to pay even the compromise amount. She and her husband would be borrowing the $60,000.

The farm in Gasconade County which is subject to the deed of trust is in Beatrice's name alone and consists of between 187 and 189 acres. Beatrice acquired all but 30 acres of this land by way of a warranty deed conveying the property to her at the time she executed the note and deed of trust. She acquired the 30 acres by warranty deed from her parents two years earlier, in 1972.

Beatrice claims ownership to two other tracts of land in her own name that are not subject to the deed of trust. The first is a 16.5 acre tract acquired from her parents by the 1972 warranty deed mentioned previously. Beatrice's husband built an earth-sheltered home on the 16.5 acre tract. The second is a 20 acre tract conveyed to Beatrice by her mother by quitclaim deed after Beatrice's father died. The explanation for the conveyance by quitclaim deed was that neither the decedent nor decedent's husband had ever received a deed to the 20 acres. Recently neighbors have surveyed the land and are apparently claiming ownership to the 20 acre tract. Whether such claim is one based on record title or adverse possession is unclear from the evidence. The 16.5 acres and 20 acres are adjacent to the property described in the deed of trust.

Beatrice also testified that she had sold approximately six acres of the land which is described in the deed of trust to Milton and Marie Francis and Fred and Virginia Johnson for $15,000. The decedent had participated in the arrangements for that sale and had attended the closing of the transaction, but for unexplained reasons had failed to execute a partial release of the deed of trust, even though the entire $15,000 received from the sale of the six acres was paid to decedent, apparently to secure her release of any claim to the tract conveyed to the Francises and Johnsons.

Real estate appraisers Ellis Copeland and Robert Stoltz estimated that the fair market value of the property subject to the deed of trust, excluding the six acres conveyed to the Francises and Johnsons, at $59,936 and $58,100, respectively. Jim Willoughby, a real estate appraiser called by appellants, estimated the fair market value of the same property at $60,000. He testified that the 16.5 acre tract with the earth-sheltered home had a fair market value of $30,000, and that the 6.5 acres conveyed to the Francises and Johnsons had a

2. After the appeal in this case was filed, the judgment in the declaratory judgment action was affirmed. *Smith v. Christopher,* 737 S.W.2d 510 (Mo.App.1987).

value of $25,000. He estimated the fair market value of the 20 acre tract at $3,000.

There is also evidence that Beatrice owned real estate and bank accounts in St. Louis jointly with her husband. No other evidence was presented indicating she had other property or income with which to pay the note.

Our review of this record reveals that there is substantial evidence supporting the trial court's order approving the compromise. A statute analogous to § 473.277 is § 473.427, which authorizes a personal representative to compromise claims against an estate "... if it appears for the best interest of the estate,...." The personal representative in compromising claims against the estate, and the trial court in approving such compromise, may consider the variable factors involving risk to the assets of the estate if the claim is not compromised. *Basler, Estate of v. Delassus, supra.* Applying that standard here, the variable factors impacting on the risk to the estate involved in seeking to collect more than the compromise amount of the claim, include the certainty or uncertainty of the amount of the claim against Beatrice, the estate's ability to collect the claim from the debtor, and the time and expense involved in collecting the note if there is no compromise.

At the time of the trial, the actual amount due on the note was still in dispute, pending a final determination on appeal. Neither the parties nor the trial court could predict with certainty the outcome of the appeal. We view the record in light of the facts available to the parties and the trial court when the order was entered, not based on events which occurred after judgment.

Assuming the declaratory judgment would be affirmed, the only likely methods of collecting on the note would be by foreclosure on the deed of trust and by execution against the debtor's individually owned real estate. Although the appraisers testified as to the fair market value of the real estate, the probate division judge could properly conclude that a foreclosure or execution sale may not bring what a willing buyer would pay a willing seller for a clear title to the property. It is well known that property, when sold at a forced sale, usually does not bring its full value. *In Re Marriage of Wilson*, 727 S.W.2d 226, 227 (Mo.App.1987). Such sales have the potential of bringing only a fraction of the fair market value. See *Boatmen's Bank of Jefferson County v. Community Interiors, Inc.*, 721 S.W.2d 72, 77 (Mo.App.1986), and *Robert R. Wisdom Oil Co., Inc. v. Gatewood*, 682 S.W.2d 882, 885 (Mo.App. 1984). There are also factors which might have a chilling affect on any offers to be expected at a foreclosure or execution sale. The factors include the claims of the Francises and Johnsons to the six acre tract, the claims of the neighbors to the 20 acre tract, and even claims of Beatrice's husband. He did not join in the deed of trust and, therefore, did not surrender his inchoate interests as a potential surviving spouse pursuant to § 474.150.2. None of these persons were parties to the declaratory judgment action and may well be prepared to vigorously assert their claims against a purchaser at a foreclosure or execution sale.

In determining Beatrice's ability to pay the amount determined to be due on the note, the evidence of real property and bank accounts jointly held with Beatrice's husband in St. Louis could properly be disregarded by the trial court. Ordinarily, when real estate is conveyed to a husband and wife as joint grantees during coverture an estate by entireties is created. *Armack's Estate v. State*, 561 S.W.2d 109, 111 (Mo. banc 1978). Bank accounts and deposits payable jointly to a husband and wife are rebuttably presumed to be held as an estate by the entirety. In *Re Estate of Jefferies*, 427 S.W.2d 439, 444 (Mo.1968). Property held by a husband and wife as tenants by the entirety ordinarily cannot be reached by creditors of only one spouse. *Vaughn v. Spitz*, 682 S.W.2d 847, 848 (Mo. App.1984).

■ The trial court properly disregarded Beatrice's social security benefits in determining the collectability of the claim. Social security benefits are exempt from execution or garnishment. 42 U.S.C.A. § 407(a) (1983).

■ In appellants' point relied on, they suggest that the evidence must "... estab-

lish there was no reasonable likelihood of recovery of more than the compromise amount...." While the likelihood of recovery of more than the compromise amount is certainly a factor to be considered in determining if the compromise is fair and reasonable, that factor is not the only consideration. The risk that additional delay and expense may be involved in pursuing the claim and that such delay and expense may ultimately result in a net recovery of less than the compromise amount may properly be considered.

Appellants argue that the statements made by the personal representative admitting he had made no investigation of other assets of the debtor which she might own in St. Louis County and that he was not sure what parcels of land owned by the debtor were included in the deed of trust militate against approval of the compromise. We note that Beatrice was called as a witness and was extensively examined and cross-examined regarding her income and property. The legal description of the property subject to the deed of trust was before the court. Nothing in the record indicates that further investigation of Beatrice's assets or closer study of the legal descriptions by the personal representative would disclose anything different than the facts presented to the court.

Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is "against the weight of the evidence" only with caution and with the firm belief that the decree of judgment is wrong. *Murphy v. Carron, supra.* Considering Beatrice's financial condition, the value of the property subject to foreclosure or execution and the potential adverse claims of others to that property, we cannot say we have a firm belief that the trial court's judgment was wrong.

The judgment is affirmed.

CROW, C.J., and GREENE, P.J., concur.