Janice C. CAMPBELL, Appellant,

v.

Joseph E. CAMPBELL, Richard F. Campbell, and Rebbecca Lake Overman, Administrator Ad Litem for the Estate of Joseph F. Campbell, Respondents.

No. WD 49245.

Missouri Court of Appeals, Western District.

March 14, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1995.

Application to Transfer Denied June 20, 1995.

Albert W.L. Moore, Jr., Independence, for appellant.

Les D. Wright, II, Kevin Thomas, Independence, for respondents.

Before SPINDEN, P.J., and LOWENSTEIN and ELLIS, JJ.

SPINDEN, Presiding Judge.

Janice C. Campbell complains in this appeal that the trial court interrupted her jury trial before she had rested and forced a settlement of her discovery of assets action in violation of her constitutional rights. She also complains that the trial court erroneously ordered the sale of stock held by her father's estate to pay administration expenses. We do not find merit in her complaints and affirm the trial court's judgment.

Campbell filed a petition for discovery of assets in which she contended that her brothers had taken property belonging to her father's estate. She demanded a jury trial, and trial began on January 24, 1994. On the fourth day of trial, the trial court told the jury:

Ladies and gentlemen of the jury, there's been some mysterious things going on from your point of view, I'm sure. I'm now in a position to explain to you what has happened and why.

Ms. Overman ... is the personal representative of the estate. As personal representative, she is responsible to be administering the Estate of Joseph F. Campbell, deceased. In that regard ... the two Mr. Campbells and Ms. Janice Campbell are heirs or beneficiaries of that estate. They will each take a one-third share of the probate estate.

. . . .

Ms. Janice Campbell early on, as you've heard in the testimony, perceived that she felt she was not receiving a fair share of what should have been in Mr. Campbell's estate; and so she retained Mr. Moore and here we are. You've heard some of the evidence in regard to what is going on.

Ms. Overman is the real party here who has the legal authority, in my view, to make final decisions as to what is in the best interests of this estate. And basically what we're talking about is what's in the best economic interests. In other words, it's going to cost a lot more to go forward or is—can we obtain a result at this point which would be economically beneficial to the estate, i.e., to these three individuals ultimately.

[Ms. Overman] has advised me—she asked me yesterday for time to get into some facts and figures and to consult with [attorneys for the other parties] regarding a possible settlement of this case. And I granted her that time, and she worked until late in the night[.]

. . . .

Ms. Overman has advised me that she recommends a settlement of this estate, and she's explained generally the terms of that settlement. I believe I have the legal authority to accede to that settlement proposition regardless of whether or not Ms. Campbell totally agrees with that settlement. And so that's what I'm doing.

And so what I'm telling you is that the case has been settled. You will not be required to decide this case on the facts. . . .

And probably none of the parties here—I've been around practicing law for over 30 years and a judge for over 20. And the rule of thumb is that if neither side is very

happy with the agreement or with the result, why it's probably pretty nearly right. And I think in this case neither parties [sic] are very thrilled with what I'm going to make them do, and therefore, I hope in the long run they will conclude or that fate or history will tell us that this is probably a fairly right result.

. . . .

And you will be discharged and you won't be called back. You're free to go home, go about your business, and thank you very much.

None of the parties objected to the trial court's dismissing the jury. After the jury was discharged, the trial court conducted a conference in which the administrator ad litem recommended a settlement of the case. At no time during the conference did any of the parties object to the proceedings.

The trial court approved the settlement proposal and entered judgment on March 2, 1994. The trial court stated in its judgment: "The settlement proposed by the Administrator ad Litem appears to fairly affect the rights of all parties, is a reasonable compromise of the controversy, and is in the best interest of the estate."

In the first two of her five points raised on appeal, Campbell complains that the trial court denied her constitutional right to a jury trial by discharging the jury before she rested her case. Mo. Const. art. I, § 22(a) (1945), guaranteed Campbell "the right of trial by jury," even in a discovery of assets action.[1] *In re Estate of Fugett*, 564 S.W.2d 628, 630 (Mo.App.1978). In her third point, she complains that the trial court erred in entering a judgment based upon the administrator ad litem's oral motion to settle and compromise the case because, she argues, the settlement agreement had to be in writing and executed by all competent parties having beneficial interests.

■ These points are without merit because the trial court acted pursuant to § 473.277, RSMo 1994, which authorizes it to accede to an administrator's proposed compromise with the estate's debtors or obligors. The statute says:

When it appears for the best interest of the estate, the executor or administrator, on order of the court, may effect a fair and reasonable compromise with any debtor or other obligor, or extend, renew or in any manner modify the terms of any obligation owing to the estate. . . . In the absence of prior authorization or subsequent approval of the court, no compromise binds the estate.

"The apparent purpose of § 473.277 is to provide a mechanism for expeditious compromise of claims held by an estate." *Smith v. Snodgrass*, 747 S.W.2d 743, 745 (Mo.App. 1988). The statute does not impose a time limit on the trial court's acceptance of a compromise from the administrator. If during a trial, the trial court determines that the estate's best interest would be served by a compromise and settlement of a claim, we find no prohibition keeping the trial court from doing so.

■ Campbell does not complain that the settlement was unfair or unreasonable and not supported by sufficient evidence. Her only complaint about the settlement itself is that the administrator ad litem did not reduce her proposal to writing. She bases her complaint on § 473.085, RSMo 1994. Although that statute, indeed, requires that the settlement terms be in writing, the statute does not relate to a § 473.277 settlement. It relates only to compromises to which all the parties agree and seek court approval. Section 473.277, on the other hand, gives the trial court authority to compromise a claim if it finds that compromise is in the estate's best interest, regardless of the parties' attitude toward settlement.

Hence, because of the trial court's conclusion that the settlement was fair and in the estate's best interest, and because the settlement resolved all of the issues which the jury trial would have resolved, the jury trial became a useless, moot exercise. The trial

---

**1.** Campbell complains that the trial court excused the jury before she rested her case. We will deem this to be true, although nothing in the record supports it. She placed only 33 pages of the trial transcript in the record on appeal: the judge's comments to the jury and the settlement conference.

court correctly terminated the trial. *See State ex rel. Rope v. Borron,* 762 S.W.2d 427 (Mo.App.1988).

■ In her fourth point, Campbell asserts that the trial court erred in ordering the sale of stock. On February 9, 1994, the administrator ad litem petitioned the trial court for an order to sell 980 shares of Ford Motor Company common stock. The administrator ad litem stated in the petition that the stock proceeds would be used to pay for estate expenses, costs and claims. Campbell objected. After a hearing, the trial court ordered the sale on March 17, 1994.

Campbell asserts that the administrator ad litem failed to establish at the hearing a want of liquidity and a need to sell the stock. She contends in the argument portion of her brief that the administrator ad litem could not, or refused to, (1) prove that the expenses and claims could be deferred; (2) deal with the eventuality that the claims and expenses might exceed the assets; (3) deal with the issue of marshaling assets to protect Campbell from being effectively deprived of her share of the residuary estate, and (4) account for the dividends paid on the Ford stock. The only authority Campbell cites in support of her point relied on is § 473.460, RSMo 1994.

We find nothing in § 473.460 which requires the administrator ad litem to account for these things, and in the absence of citations of relevant authority by Campbell, we deem her point abandoned as to these items. *Inman v. Reorganized School District No. II of Hayti,* 845 S.W.2d 688, 694 (Mo.App.1993). To the extent that she is asserting that the administrator ad litem failed to establish at the hearing a want of liquidity and a need to sell the stock, we review the point and find that it is without merit.

Section 473.460.1 provides, "Real or personal property belonging to an estate may be sold ... under court order ... (4) For the payment of expenses of administration including court costs[.]" The administrator ad litem testified at the hearing that the estate had no liquid assets. She stated that the only asset under her control was the stock and some real property. The real property was not in "immediate condition for sale,"

she said. She also testified that there were ongoing expenses of administration which included utility bills, expenses of maintaining the real property, attorney's fees and court costs. We conclude that substantial evidence existed from which the trial court could have concluded that the sale of the Ford stock was in the estate's best interest.

■ In her last point, Campbell asserts that the trial court's order allowing the stock sale was void for want of constitutional due process. She says that the trial court denied her right to cross-examine and to introduce evidence. The only authority she cites in support of her point relied on is Mo. CONST. art. I, §§ 10 and 14 (1945), and U.S. CONST. amend. V and XIV. She complains that the trial court would not let her present evidence concerning the prudence of not selling the stock. She argues, "There can be no meaningful hearing when the bench takes up the cudgel for the one side and denies the other side the right to present evidence or to cross-examine without gratuitous harassment from the bench, but that is precisely what happened here."

The trial court did not take up the cudgel, nor did it harass. Campbell endeavored to present testimony concerning the stock which the trial court deemed irrelevant. The trial court permitted Campbell to cross-examine the administrator ad litem. When Campbell proffered the testimony of an expert concerning the stock, the trial court refused it and explained:

I assume your expert would testify that the Ford Motor Company is a strong company, ... that the market is strong, that the prognostication is that the stock will maintain or increase in value and/or dividend productivity and that sort of thing. Is that—is that the nature of his—would have been his testimony?

[CAMPBELL'S ATTORNEY]: That would be part of it, Your Honor. He would also, I believe, verify the—the amounts paid in dividends by—on Ford Motor Company stock, which—

THE COURT: That's a matter of accounting between [Campbell's brothers] and [the administrator ad litem].

[CAMPBELL'S ATTORNEY]: Well, Your Honor, ... as a party in interest, I would think it would be a matter of interest for Janice Campbell as well because—

THE COURT: That's a matter of accounting. They were the former fiduciaries. They must account to [the administrator ad litem]. That has not been done. And that will be ordered right now. And there will be an accounting. So, ... arrange to have a final settlement over from—from [Campbell's brothers]—I forget your names. Sorry—to [the administrator ad litem] within 30 days of this date.

That will then give [the administrator ad litem] standing to determine the propriety of an accountability and will allow her to file objections to that settlement if objections are appropriate.

[CAMPBELL'S ATTORNEY]: Well, Your Honor, if it—if it turns out that there should be liquid assets that—that have not been accounted for, then—then I suggest it's premature to—to decide now to sell the stock.

THE COURT: I don't think that—I don't think that this is relevant. You have—[y]our client has no specific right to any specific piece of property in this estate. And so, what I'm going to do is allow the—I'm going to allow the—the order of sale and let [the administrator ad litem] decide on when and if she should sell the stock.

 Generally, a trial court has full discretion to rule on questions regarding the admission of evidence. *D.L.H. v. H.T.H.*, 780 S.W.2d 104, 106 (Mo.App.1989). We will reverse the trial court's rulings on these matters only if we find plain evidence that the court has abused its discretion. *M--- D--- v. C--- D---*, 691 S.W.2d 406, 408 (Mo.App.1985). Given the nature of these proceedings, we do not discern an abuse of discretion in the trial court's conclusion that Campbell's expert testimony was irrelevant.

The judgment of the trial court is affirmed.

All concur.