In the ESTATE OF Kenneth W. ASAY and Nila Rae Asay, MBI, Limited, Appellant,

v.

Chester ASAY, et al., Respondents.

No. WD 49690.

Missouri Court of Appeals, Western District.

July 25, 1995.

Guy A. Magruder, Jr., Van Osdol, Magruder Erickson & Redmond, Kansas City, Cary D. Jones and Lynn H. Pace, Snell & Wilmer, Salt Lake City, UT, for appellant.

Ralph A. Monaco II, Kansas City, for respondent Chester A. Asay.

Robert W. McKinley and Neil L. Johnson, Swanson, Midgley, Gangwere, Kitchin & McLarney, Kansas City, for respondent Robert M. Wall.

Before BRECKENRIDGE, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

BRECKENRIDGE, Presiding Judge.

MBI, Ltd. (formerly known as 1230 North Venture) appeals from an order approving a compromise settlement of a claim against the estate of Kenneth W. Asay and Nila Rae Asay. Pursuant to the settlement, one of the creditors, Robert M. Wall, received a portion of estate assets greater than his pro rata share. The agreement compromise was negotiated to avoid the risk that Mr. Wall was a secured creditor and would, without a settlement, receive substantially all of the estate assets.

MBI raises three points on appeal, claiming that the probate division erred in approving the compromise settlement agreement because (1) it did not have the authority to do so without first resolving MBI's objection to Mr. Wall's claim; (2) the settlement agreement was not in the best interest of the estate; and (3) the probate division did not hear adequate evidence to determine whether the settlement agreement was in the best interest of the estate. The judgment is affirmed.

On March 13, 1985, Kenneth and Nila Asay were killed in an airplane crash while flying from Missouri to Utah. They were survived by four minor children. The Circuit Court of Jackson County, Missouri, Probate Division, took jurisdiction over the estate on March 10, 1986 and appointed Chester H. Asay, the father of Kenneth Asay, as personal representative.

Claims against the estate represented an aggregate amount greater than the assets contained therein. The creditors with the largest demands against the estate were MBI and Mr. Wall.[1] A priority minors' allowance was also requested on behalf of the children of Kenneth and Nila Asay.

The appellant, MBI, claimed that it was owed roughly $230,000 in principal by the estate, but that with accrued interest, the amount had escalated to approximately $500,000.[2] Robert M. Wall filed a claim against the estate, which at the time of the hearing on the settlement agreement was in the approximate amount of $1,050,000. Mr. Wall asserts that he has a security interest in past, current and future receivables from the former employer of Kenneth Asay, A.L. Williams & Associates, which represents virtually all of the assets of the estate.[3]

The personal representative filed Stipulated Facts, exhibits and suggestions as to defenses against Mr. Wall's claim. MBI also filed an objection to Mr. Wall's claim, arguing that it did not exist and that the claim was not secured. Then, on October 14, 1992, Mr. Wall filed an amended claim and petition against the estate and the personal representative. The petition sought, among other things, allowance of Mr. Wall's claim in full, a declaration that Mr. Wall's claim was fully secured, a declaration that all assets held by the estate were in fact Mr. Wall's collateral, and imposition of a constructive trust against the personal representative for purported misappropriation of property which was subject to Mr. Wall's alleged security interest.

---

1. There were additional claimants as well, some of whom include:
   Clip and Ronella Taylor—$20,000
   James and Shirley Mangum—$30,000
   Berman & Anderson—$8,500
   Internal Revenue Service—$4,800
   Chester Asay—$64,000.

2. MBI's claim was apparently unsecured due to foreclosure on MBI's security by senior lienholders.

3. Kenneth Asay was given a ten-year buy-out plan when he left the employment of A.L. Williams. He was entitled to receive all renewal commissions on life insurance policies which he or his agents had written. The commissions owing to the estate include future receivables of $5,000 per month for the first year, $2,000 per month the second year and decreasing amounts thereafter.

Following the filing of Mr. Wall's amended claim, the personal representative and Mr. Wall entered into settlement negotiations and, on March 28, 1993, agreed upon the terms of the compromise settlement in question. The personal representative filed a motion to approve the compromise settlement on December 15, 1993, and a hearing on the matter was held on February 22, 1994. MBI was the only creditor which openly contested the compromise settlement.

Under the compromise settlement, Mr. Wall would receive $330,000, while the surviving minor children of Kenneth and Nila Asay would be paid $40,000 in satisfaction of their claims against the estate. In addition, the I.R.S. would receive $4,890, and administrative expenses would be allowed in the amount of $9,858. The balance of the estate would be divided pro rata among the remaining unsecured creditors. All future income would be paid into an escrow account for distribution to the remaining creditors.

During the hearing on the compromise settlement, the personal representative testified that the estate held approximately $440,000. If Mr. Wall were an unsecured creditor, a pro rata distribution of the estate would probably result in his receiving over fifty percent of that amount. Under the compromise settlement Mr. Wall would be paid a larger portion, approximately seventy-five percent of the distribution. If the settlement were not approved and it was determined that Mr. Wall held a valid secured interest, however, Mr. Wall would be entitled to the entirety of the estate. The personal representative testified that he entered into the agreement to avoid protracted litigation of Mr. Wall's claim and the risk that Mr. Wall would be successful in such litigation and collect all the assets of the estate to the detriment of the remaining creditors. He also stated that, after discussing the matter with his attorney, he believed the settlement was in the best interest of the estate.

Following the hearing, the commissioner determined that the compromise settlement was indeed in the best interest of the estate. An amended order approving the compromise settlement was entered on June 7, 1994. MBI appeals that order.

I.

■ In its first point on appeal, MBI contends that the probate division erred in approving the compromise settlement agreement because it was granted without first resolving MBI's objection to Mr. Wall's claim. According to MBI, the personal representative had no right to enter into the compromise settlement when it affected other claims against the estate. MBI relies on § 473.403, RSMo1994,[4] a statute concerning the allowance of claims, arguing that the statute requires the probate court to adjudicate objections to a claim prior to the allowance of the contested claim.

It has long been held that personal representatives have "the usual powers of a trustee, including the power to compromise 'actions on doubtful claims as the circumstances of particular cases may justify.'" *Boatmen's Nat. Bank of St. Louis v. Bolles*, 356 Mo. 489, 496–97, 202 S.W.2d 53, 57 (Mo.1947) (quoting *Jeffries v. Mut. Life Ins. Co.*, 110 U.S. 305, 309–10, 4 S.Ct. 8, 11, 28 L.Ed. 156, 158 (1884)). Section 473.427 governs the power of personal representatives to compromise claims, and reads as follows: "When a claim against the estate has been filed or suit thereon is pending, the creditor and personal representative, if it appears for the best interest of the estate, may compromise the claim, whether due or not due, absolute or contingent, liquidated or unliquidated." Because a compromise is permitted on a claim which is not absolute, it is clear that the legislature intended to grant the personal representative some discretion in this matter.

■ Compromise is favored by the law. *Estate of Basler v. Delassus*, 690 S.W.2d 791, 796 (Mo. banc 1985). In fact, in *Basler*, the Missouri Supreme Court ruled that a personal representative may seek and obtain ap-

4. Unless otherwise indicated, all statutory citations refer to Revised Statutes of Missouri 1994.

proval of a compromise by the probate court prior to final settlement of the estate despite the fact that devisees object to the claim and believe it should be litigated. *See id. Basler* involved a testatrix who devised a tract of land to her four children in equal shares. The will stated that, should the devisees desire to sell, the decedent's grandson was to have first option to purchase the land at market value. The grandson claimed, however, that he had entered into an oral contract with the testatrix and her husband to purchase the tract for $20,000 in consideration for his having farmed the land.

Under a compromise settlement, it was agreed that the grandson would pay consideration of $60,000 for the tract, though two of the devisees objected to the compromise, since they wished to have their own specific enjoyment of the real estate. The court, in interpreting § 473.427, held as follows:

> So here the objecting devisees argue that the administrator ad litem must oppose the [grandson's] claim for specific performance to the last ditch, even though he might believe that this claim and the attendant monetary claim were menacing and might substantially impair the solvency or liquidity of the estate. We do not know how the claims might ultimately be resolved. The estate might achieve total victory or might suffer total defeat. Uncertainty is the reason for compromise. *The objecting devisees of course may differ with the administrator as to the danger posed by the claims and the reasonableness of the compromise, but the probate law confers the authority and the responsibility on the personal representative. It is not necessary to accord a veto power to every tenant in common.*

*Id.* (emphasis added).

*Basler* explains the parameters of the authority granted to the personal representative in a compromise situation, suggesting that there is no room for "veto power" by dissatisfied objectors. *See id.* Following *Basler*, MBI's objection to the compromise settlement is not controlling, since the deter-

mination of the proper course of action is left to the personal representative.

MBI attempts to distinguish *Basler* from its own situation by explaining that the *Basler* settlement could be legally accomplished without the agreement of all tenants in common, since any one of the devisees had the power to force a sale of the land. *See id.* at 794. The *Basler* court did not base its affirmance of the compromise settlement on the fact that those objecting to the settlement were devisees who could be forced by another co-tenant to sell the real estate at issue. Rather, because the will did not guarantee the devisees the enjoyment of specific real estate, the court held that the devisees' interest was "essentially a monetary right which they share with others and which should be subject to compromise by the personal representative." *Id.* at 796.

Similarly, MBI can claim no more than a monetary right, shared with the other claimants and devisees, which is subject to compromise by the personal representative. The settlement negotiated in this case compromises the monetary rights of MBI as well as the other creditors, in that it deprives such creditors of the option of litigating the validity of Mr. Wall's claim during a hearing. The full litigation of Mr. Wall's claim would also affect the creditors, however, by increasing the costs of administration at a minimum and, in the worst case, result in Mr. Wall being entitled to virtually all of the estate if he had a valid security agreement.

Moreover, in cases where the estate is facing insolvency, § 473.433.3 indicates that the personal representative "may report that fact to the court and apply for any order that he deems necessary in connection therewith." There was testimony from the personal representative that he believed approval of a compromise settlement was necessary to handle the predicament posed by Mr. Wall's claim.

To bolster its argument, however, MBI claims that § 473.427 must be read in conjunction with § 473.403, a statute covering the allowance of claims. Section 473.403 reads, in pertinent part:

1. Except as provided in subsections 2 and 3 hereof, no claimant is entitled to payment unless his claim has been duly filed and allowed by the court. Upon the adjudication of any claim the court shall allow it in whole or in part, or disallow it. The order allowing the claim has the effect of a judgment. . . .

2. Except in case of the personal representative's own claim, any claim may be paid by the personal representative, without allowance thereof by the court, and credit may be had therefor in his settlement, provided the same is either paid or filed within the time prescribed by section 473.360; but, if written exceptions thereto are duly filed by any interested party within the time allowed for filing exceptions to the final settlement of the personal representative, hearing by the court shall be had thereon. On such hearing the burden is on the personal representative to prove that the estate was liable on the claim for the amount so paid. If the court adjudges that the estate was not liable for any part of the amount paid, the exceptions to such extent shall be sustained.

MBI maintains that the language of the above statute requires that, once an objection to a claim is made, "a hearing by the court" must be had in order to review and assess the merits of the claim. According to MBI, the court did not properly complete this review and assessment, since it never considered MBI's objection and failed to conduct an inquiry into the validity of Mr. Wall's claim.

■ To determine whether § 473.403 applies to compromise settlements, it is necessary to examine both § 473.403 and § 473.427. "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in their plain and ordinary meaning." *Estate of Welch,* 797 S.W.2d 742, 747 (Mo.App.1990). When the language of a statute is clear and unambiguous, there is no room for statutory construction. *Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988). The standard for determining whether a statute is clear and unambiguous is whether its terms are plain and clear to one of ordinary intelligence. *Id.*

Under 473.403.2, "any claim may be paid by the personal representative, without allowance thereof by the court, ... but, if written exceptions thereto are duly filed by any interested party ..., hearing by the court shall be had thereon." MBI apparently believes that its objection to Mr. Wall's claim triggered the need for such a hearing. Yet, the standards for a hearing under § 473.403.2 and § 473.427, the statute governing compromise settlements, are noticeably different.

The plain and ordinary language of § 473.403.2 requires the personal representative to counter an objection by proving "that the estate was liable on the claim for the amount so paid." On the other hand, § 473.427 only requires an *appearance* that the compromise settlement be "for the best interest of the estate. . . ." Clearly then, § 473.403.2 imposes a much tougher burden on the personal representative. Such a discrepancy creates an ambiguity as to whether § 473.403.2 applies to compromise situations.

■ When the language of a statute is ambiguous or leads to an illogical result, courts may look beyond the plain and ordinary meaning of the statute. *State ex rel. Md. Heights, etc. v. Campbell,* 736 S.W.2d 383, 387 (Mo. banc 1987). To interpret a statute, it is appropriate to consider the statute's history, surrounding circumstances and the objective to be accomplished through it. *Glanville v. Hickory County Reorg. Sch., etc.,* 637 S.W.2d 328, 330 (Mo.App.1982). The objective behind compromises is to provide a settlement when there is uncertainty in some respect as to the legitimacy of the claim. *See Basler,* 690 S.W.2d at 796. A compromise, by its nature, is not based on absolute proof of liability. Rather, it is based on uncertainty sufficient to convince both the creditor and the personal representative to make concessions. *See* Black's Law Dictionary 287 (6th ed. 1990). "The whole purpose of compromise would be defeated if

it were necessary to try the whole case to determine whether the compromise should be approved." *Basler*, 690 S.W.2d at 797. To require one to prove, in a compromise situation, that the estate was liable for the exact amount paid would therefore be illogical. The court must presume that the legislature intended a logical result rather than an absurd or unreasonable one. *State ex rel. Lebeau v. Kelly*, 697 S.W.2d 312, 315 (Mo. App.1985).

In addition, the provisions of an entire legislative act are to be construed together and read in harmony, whenever reasonably possible. *Blaine v. J.E. Jones Const. Co.*, 841 S.W.2d 703, 711 (Mo.App.1992). Statutes relating to the same subject matter are in *pari materia* and should be interpreted as if they constitute one act. *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 200 (Mo. banc 1991). To maintain coherence and harmony, it must be determined that, contrary to the assertions of MBI, § 473.403.2 does not apply in the compromise settlement situation of this case. Any other interpretation would create an irreconcilable conflict between that statute and § 473.427. Hence, the probate division only need conclude that the settlement was in the best interest of the estate; not that the estate was necessarily liable for the amount paid.

MBI cites *Calvin F. Feutz Funeral Home v. Estate of Werner*, 417 S.W.2d 25, 27 (Mo. App.1967), however, for the proposition that the court had a duty to review and assess the merits of Mr. Wall's claim before approving the settlement compromise. *Feutz* analyzes § 473.403.1, stating, "It is readily apparent from that section that the Probate Court not only has the power but it is its duty to pass on any claim presented for allowance against a decedent's estate, and to allow it in whole or in part, or disallow it, according to its validity and merits." *Id.*

While this statement is generally true, a court is not required to determine the ultimate validity of a claim to be compromised since, as discussed above, a resolution of the claim's legitimacy would eradicate any need for settlement. For that reason, § 473.403.1, like § 473.403.2, does not apply to compromises of claims such as the one before this court.

The Probate Division had the authority to approve the settlement compromise without requiring that the proponents of the compromise prove that the estate was liable for the amount proposed to be paid on Mr. Wall's claim. Point denied.

## II.

In its next point on appeal, MBI argues that the ruling by the probate division approving the settlement agreement was unsupported by the evidence and against the weight of the evidence because the evidence presented did not demonstrate that the settlement was in the best interest of the estate. MBI claims, first, that the risk of Mr. Wall prevailing on his claim was very low and, second, that the estate would not have incurred any expenses in resolving Mr. Wall's claim, since MBI had already offered to pay litigation costs.

■ In court-tried cases, such as the compromise of a claim, the appellate court will follow the dictate of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), affirming the decision unless there is no substantial evidence to support the judgment, it is against the weight of the evidence, or it erroneously declares or applies the law. *Smith v. Snodgrass*, 747 S.W.2d 743, 745 (Mo.App.1988). An order is set aside as being against the weight of the evidence with caution and only upon the firm belief that it is incorrect. *Murphy*, 536 S.W.2d at 32. In assessing the trial court's decision, the evidence is considered in the light most favorable to the judgment. *Smith*, 747 S.W.2d at 745.

■ Applying that standard to the case at bar, this court will determine whether the probate court erred in approving the settlement compromise. During the hearing on that matter, the personal representative testified as follows:

Q: The reason that you have entered into this agreement is because you believe

that there is a risk to the estate that Mr. Wall could, by virtue of his claim, be entitled to receive not only all the monies [sic] that have been paid in this estate to date, but all future money and all current money that is currently sitting in the estate; is that correct?

A: Yes.

Q: And that, if that were to occur, then the minors and none of the other creditors would receive any proceeds from this estate?

A: That's my understanding, yes.

\* \* \* \* \* \*

Q: And that is the basis of why you're asking the Court to consider to approve this settlement, because this does ensure other creditors compensation out of this estate?

A: That's right. At least everybody would get something.

Q: Under this settlement, Mr. Wall is also compromising his own alleged claim by about 70 percent; is that correct?

A: Based on his alleged claim, yes.

\* \* \* \* \* \*

Q: Nevertheless, you do believe that there is some risk to the estate that Mr. Wall going forward with this claim could prevail, and that forms the basis of why you believe this to be in the best interest to approve this settlement?

A: Yes.

\* \* \* \* \* \*

Q: We have discussed, have we not, Mr. Asay [personal representative] percentages of risk and the possibility of Mr. Wall prevailing; have we not?

A: Yes, we have.

Q: Without getting into what you and I discussed so we don't waive our privilege, it is still nonetheless with regard to percentages that you believe that a risk of Mr. Wall winning is sufficient enough of a risk to support the approval of this settlement as being in the best interest of the estate regardless if that percentage is whatever, simply because of the risk being there and this provides and affords everyone a chance to recover some funds out of this estate?

A: That's correct.

RECROSS–EXAMINATION ...

Q: And you're relying on your attorneys to help you make that decision?

A: Definitely.

This testimony is direct evidence that the compromise of Mr. Wall's claim was in the best interest of the estate. To determine the best interest of an estate, it has been said that a court must ascertain whether there is a "reasonable economic basis" for the compromise. *See* John A. Borron, Jr., *Independent Administration and Other Probate Matters under the New Code*, 37 J.Mo.B. 13, 30 (1981). The personal representative indicated that the settlement would permit the minor children of the decedents and all creditors to collect a portion of the amount owed them. This is an economic incentive for settlement of the Wall claim.

MBI argues, however, that other testimony by the personal representative nullified the possibility of ruling in favor of the settlement compromise. Most notably, MBI refers to remarks by the personal representative indicating the personal representative only believed Mr. Wall had a one to five percent chance of prevailing as a secured creditor. Although the personal representative's percentages might seem low, other evidence existed to establish that Mr. Wall's claim posed a serious risk to other creditors of the estate. For example, the court took judicial notice of the claims filed by Mr. Wall and attachments thereto, the stipulated facts and attachments, the exhibits filed in July 1992, and the supplemental list of exhibits.

In addition, the "active pleadings in the present case, as in any case, function[ed] in their traditional manner for their normal purpose in the lawsuit by limiting the issues in dispute." *Lewis v. Wahl,* 842 S.W.2d 82, 86 (Mo. banc 1992). The probate court could then use such pleadings to determine the nature of the issues in dispute. *See id.* at 86–87.

The parties stipulated that Kenneth and Nila Asay executed a promissory note to Mr. Wall, as well as a Security Agreement dated December 14, 1984. Mr. Wall attached to his claim a copy of such Security Agreement which purports to give him a security interest in "[a]ny and all receivables, money or amounts of any nature now owed or hereafter owing or paid to [the Asays] by and from A.L. Williams & Associates, Inc., ... in the form of payments, pension, deferred compensation, residuals, commissions, or any other form of payment or compensation...." In various pleadings, the personal representative and MBI outlined the defenses which they claim defeat Mr. Wall's security interest. The defenses to Mr. Wall's claim raised by the pleadings are that (1) Mr. Wall's claim is barred by § 473.433.1 for failure to serve the personal representative within six months of the date of first publication of letters; (2) Mr. Wall's filing of a suit against the personal representative in Utah did not satisfy the notice requirements of §§ 473.433.1 and 473.367; (3) the security interest was not perfected as required by § 400.9–103(3)(e); (4) the claim is barred by the Utah statute of limitations; (5) Mr. Wall admitted in his pleadings that he is an unsecured creditor; (6) the interest claimed is usurious under §§ 400.9–201, 408.070 and 408.030; (7) even if not usurious, the interest is limited by the contract to the lesser rate of fifteen percent; (8) the interest should not begin to accrue until the claim is allowed; (9) the claim is barred by laches; and (10) Mr. Wall is estopped from asserting or enforcing his security interest.

Considering all the evidence before the probate court and the nature of the issues in dispute, the court's decision that the compromise settlement was in the best interest of the estate was not unsupported by substantial evidence, nor was it against the weight of the evidence.

■ Although the above determination is dispositive of MBI's point two, this court will also address the second portion of MBI's allegation, that the probate court erred in approving the compromise settlement agreement because the estate would not have incurred any of the costs associated with the litigation of Wall's claim. At the hearing, the personal representative noted that the proposed settlement would avoid the risk of litigation. Although he did not specifically articulate that the avoidance of litigation would also help preserve estate assets, that is the logical inference.

MBI suggests that the inference is wrong in this case, since, in its reply brief in opposition to the motion to approve the compromise settlement, MBI offered to pay for the litigation. In that brief, MBI remarked:

> The two principal creditors of this estate are MBI and Wall. Those two parties are currently engaged in a dispute as to the validity and amount of Wall's claim. However, since the liabilities of the estate exceed its assets, the estate has no interest in determining whether the assets of the estate are ultimately to MBI or to Wall. For that reason, the Personal Representative need not be involved or incur any litigation costs in resolving the dispute as to Wall's claim. Indeed the Personal Representative should merely adopt a neutral position and allow MBI and Wall to resolve this dispute at their own expense. Accordingly, there is no risk that the assets of the estate would be depleted through the costs of litigation.

This court cannot agree with MBI, since the statement does not constitute a definite offer to finance the litigation of the Wall claim. An offer "creates a power of acceptance permitting the offeree by accepting the offer to transform the offeror's promise into a contractual obligation." Black's Law Dictionary 1081 (6th ed. 1990). Here, there is no prom-

ise that MBI will reimburse the estate for the costs it incurs in adjudicating the viability of Mr. Wall's claim, but instead there is merely the suggestion that MBI would take the lead in such litigation. The personal representative would still be a party and have the responsibility to monitor the proceedings.

MBI offers no concrete evidence that the estate had the realistic option of incurring no further costs during the litigation of Mr. Wall's claim. Again, the decision of the probate court was not unsupported by substantial evidence and was not against the weight of the evidence. Point denied.

## III.

In its third and final point on appeal, MBI argues that the probate division erred in approving the settlement agreement because it did not hear adequate evidence to determine whether the settlement was in the best interest of the estate. MBI contends that evidence should have been presented as to the validity of Mr. Wall's potential secured claim against the estate so that the probate division could resolve that issue.

In its brief, MBI states, "the determination of whether or not a proposed compromise is in the best interest of the estate *requires* an assessment of 'the variable factors involving risk to the assets of the estate if the claim is not compromised.' " (emphasis added) (quoting *Smith*, 747 S.W.2d at 747). MBI then argues that, to determine such risk, the probate division was compelled to "resolv[e] the question of whether or not Wall had a secured claim ... prior to ruling on the proposed Settlement Agreement."

MBI makes three errors in its contention. First, *Smith* merely holds that "[t]he personal representative in compromising claims against the estate, and the trial court in approving such compromise, *may* consider the variable factors involving risk to the assets of the estate if the claim is not compromised." *Smith*, 747 S.W.2d at 747 (emphasis added). Regardless of this discrepancy, the court in this case did consider risk factors, as discussed in point two.

Second, the probate court was not obliged to resolve the issue of whether Mr. Wall had a valid security interest against the estate. As discussed in point one, compromises are only plausible when the outcome of a claim is uncertain. The entire purpose of the compromise would have been thwarted if that uncertainty had been resolved.

Finally, despite the fact that MBI was not entitled to have its objections to Mr. Wall's claim fully resolved, MBI had an opportunity at the hearing on the compromise settlement to present evidence and cross-examine witnesses as to the variable factors involving risk to the assets of the estate from Mr. Wall's claim. Any objections MBI had to Mr. Wall's claim could have been brought to the probate court's attention at such hearing. Point denied.

The judgment is affirmed.

All concur.