ESTATE OF Jeffrey Allen GRIFFITTS.

CRIPPLED CHILDREN SERVICES, STATE OF MISSOURI, Plaintiff–Appellant,

v.

Hope Christine GRIFFITTS, Conservator, Defendant–Respondent.

No. 20478.

Missouri Court of Appeals, Southern District, Division One.

Feb. 7, 1997.

Richard L. Beaver, Jefferson City, for plaintiff-appellant.

Deborah K. Dodge, Hall, Ansley, Rodgers & Condry, P.C., Springfield, for defendant-respondent.

BARNEY, Presiding Judge.

Crippled Children's Services of the State of Missouri (CCS), a program administered by the Missouri Department of Social Services, appeals the decision of the trial court denying CCS recovery of expenditures against the Estate of Jeffrey Allen Griffitts made pursuant to § 201.040.[1] Findings of fact and conclusions of law were not issued as neither party requested them.

■ The judgment of the trial court will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence or unless it erroneously declares or applies the law. Rule 73.01(c), Missouri Rules of Civil Procedure (1996); *Gowen v. Cote,* 875 S.W.2d 637, 639 (Mo.App.1994). Furthermore, this Court accepts as true the evidence and inferences favorable to the trial court's judgment and disregards contrary evidence. *Coffey v. State ex rel. County of Stone,* 893 S.W.2d 843, 846 (Mo.App.1995). We presume that all fact issues on which no findings were made were found in accordance with the judgment. *Id.* As the appellant, CCS bears the burden of demonstrating that the trial court's judgment is incorrect. *Shadow Lake of Noel, Inc. v. Supervisor of Liquor Control,* 893 S.W.2d 835, 839 (Mo. App.1995).

Jeffrey Allen Griffitts (Jeffrey) is the son of Hope and Jeffrey Griffitts (Griffitts).[2]

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

2. This opinion will use Mrs. Griffitts' first name of Hope for the sake of readability. We mean no

During his delivery, Jeffrey allegedly sustained brain damage as a result of the negligence of the doctors managing his delivery and he now requires constant care. The Griffitts brought a malpractice action both individually and on Jeffrey's behalf and in 1987 a settlement was reached. Jeffrey received approximately $300,000.00 and the Griffitts received an additional $100,000.00, after attorney's fees. Hope Griffitts was appointed conservator of Jeffrey's estate. The money from the malpractice settlement is to be used for Jeffrey's care for the remainder of his life.

Prior to the settlement of the medical negligence case, Jeffrey had been receiving benefits from CCS for most of his life. When the medical negligence case was settled the Griffitts no longer applied for benefits in Jeffrey's behalf and CCS was reimbursed for all money that it had expended in his behalf.

In early 1992, Jeffrey was hospitalized to have his tonsils removed. During his hospitalization, complications arose and he was placed in the intensive care unit for several days. While at the hospital Hope was approached by a social worker who encouraged her to apply for benefits from CCS to help cover the cost of Jeffrey's hospitalization. Hope informed the social worker of the previous benefits received from CCS and the malpractice settlement and expressed her concern that Jeffrey would not qualify.

Hope completed the CCS application and attached an addendum informing them of Jeffrey's "trust fund" and the exact amount that it contained. A representative of CCS testified that they were aware of the addendum to the application and that it would have been considered in determining if Jeffrey was eligible for benefits. CCS approved Jeffrey for benefits and Hope reapplied in 1993, 1994 and 1995.[3] Each year Jeffrey was approved for benefits and enrolled in the program. Despite the claim for reimbursement of the monies, CCS maintains that Jeffrey is still eligible for benefits.

On July 17, 1995, CCS filed a first amended claim against Jeffrey's estate seeking reimbursement in the amount of $9,766.49, the sum that had been paid out in Jeffrey's behalf since 1992.[4] CCS urges that it is entitled to reimbursement of these funds under § 201.040, which sets forth CCS' subrogation rights.[5]

The conservator, on the other hand, maintains that CCS waived any right of subrogation that it may have had because it provided services to Jeffrey, having knowledge of the fact that Jeffrey's estate had sufficient funds to make payments to the service providers. Therefore, the conservator argues that CCS should be equitably estopped from pursuing its claim against Jeffrey's estate.

disrespect. Likewise, the name Hope and her title as conservator will be used interchangeably.

3. Hope informed CCS of the "trust fund" with the first application in 1992. Thereafter, she did not include an addendum to her applications in 1993, 1994 or 1995. The application did not inquire as to any assets the family owned, but instead asked only for adjusted gross income, the number of people living in the household, whether child support payments were being made or received and whether the applicant was on Medicaid, covered by medical insurance or on SSI.

4. Hope, as conservator of Jeffrey's estate, stipulated to the admission and veracity of CCS' records, the amount of the claim, as well as the itemized summary of the claim.

5. Section 201.040 reads, in pertinent part, as follows:

Any child residing in the state of Missouri who is crippled or is suffering from conditions which lead to crippling, who is in need of services because of his condition, who has been certified by a physician of his choice as a person who can probably benefit from such services, who is financially unable to pay for such services and whose parents, guardian, or person legally chargeable with his support is unable to pay therefor, shall be entitled to such services without charge, but if any person, firm, corporation, or public or private agency is liable, either pursuant to contract or otherwise, to the parents or a recipient of services on account of personal injury to or disability or disease of the recipient of services, the service is subrogated to the right of the parent or recipient to recover from that part of the award or settlement an amount equal to the amount expended by the service for services which are not otherwise recoverable from the parent or recipient. The acceptance of services from the service constitutes acknowledgment of subrogation rights by the service, and the service may take any and all action necessary to enforce the subrogation rights.

This Court determines that Jeffrey's estate is not responsible for CCS's claim. This is not because CCS has waived its right to subrogation or is otherwise estopped from asserting its claim against the estate. Rather, the facts of this case do not support a claim for subrogation as that term is defined by statutory and common law.

■ The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible and to consider words used in their plain and ordinary meaning. *Estate of Asay v. Asay*, 902 S.W.2d 876, 880 (Mo.App.1995). When the language of a statute is clear and unambiguous, there is no room for statutory construction. *Id.* Where a statute uses words which have a definite and well known meaning at common law it will be presumed that the terms are used in the sense in which they were understood at common law, and they will be so construed unless it clearly appears that it was not so intended. *State ex rel. Quest Communications Corp. v. Baldridge*, 913 S.W.2d 366, 369 (Mo.App.1996). When the legislature enacts a statute referring to terms which have had other judicial or legislative meaning attached to them, the legislature is presumed to have acted with knowledge of that judicial or legislative action. *Hudson v. School Dist. of Kansas City*, 578 S.W.2d 301, 311 (Mo.App.1979).

Section 201.040 provides that CCS is subrogated to the right of a child who receives its services if another party is liable to the child for personal injury to, disability or disease of the child.

■ Subrogation is defined as the substitution of one person in the place of another with reference to a lawful claim or right. 73 AM.JUR.2D *Subrogation* § 1 (1974); *see also American Nursing Resources, Inc. v. Forrest T. Jones & Co., Inc.*, 812 S.W.2d 790, 794 (Mo.App.1991). It is the "substitution of another person in the place of the creditor, so that the person in whose favor subrogation is exercised succeeds to the right of the creditor in relation to the debt." *Id.* In other words:

[A]ny person who, pursuant to a legal obligation to do so, has paid even indirectly, for a loss or injury resulting from the wrong or default of another will be subrogated to the rights of the creditor or injured person against the wrongdoer or defaulter, persons who stand in the shoes of the wrongdoer, or others who, as the payor, are primarily responsible for the wrong or default.

*Kroeker v. State Farm Mut. Auto. Ins. Co.*, 466 S.W.2d 105, 110 (Mo.App.1971). "The person who claims subrogation ... must have acted to make the payment under the compulsion of a legal liability or to protect some other interest." *American Nursing*, 812 S.W.2d at 794; *see also Cole v. Morris*, 409 S.W.2d 668, 670 (Mo.1966). Therefore, in order to achieve subrogation, the subrogor (Jeffrey's estate), must have some existing right or legal claim that can be subrogated to fulfill the claim of the subrogee (CCS). This element does not exist in the present case.

At the time that CCS paid the benefits in Jeffrey's behalf the malpractice settlement had been reached and Jeffrey and the Griffitts no longer had claims against the medical personnel. Therefore, there is no existing claim or right available to be subrogated.

Although CCS uses the language of subrogation contained in § 201.040, what CCS appears to be arguing is that it has a right to a *lien* on Jeffrey's estate, in order to satisfy its claim of $9,766.49. However, § 201.040 does not provide for a lien.

As distinguished from the right of subrogation, a lien does not require one party to acquire the *existing right or claims* of another person. " '[A] lien is recognized to be a charge upon property, either real or personal, for the payment or discharge of a particular debt or duty in priority to the general debts or duties of the owner.' " *St. Louis Inv. Properties v. Sewer Dist.*, 873 S.W.2d 303, 307 (Mo.App.1994)(quoting 51 AM.JUR.2D *Liens* § 1 (1970)); *see also Dysart v. State Dept. of Public Health & Welfare*, 361 S.W.2d 347, 353 (Mo.App.1962); 53 C.J.S. *Liens* § 2 (1987). "Subject to constitutional limitations, the legislature may provide for liens to secure the payment of debts." *St. Louis Inv. Properties*, 873 S.W.2d at 307.

Jeffrey's estate has no existing rights or claims against third parties that can be subrogated to fulfill the claim of CCS, the purported subrogee. Therefore, CCS has no right of subrogation and its claim is precluded.

The judgment of the trial court is affirmed.

GARRISON and PREWITT, JJ., concur.