Billy E. SMITH, Relator–Respondent,

v.

STATE of Missouri, ex rel., Jeremy RAMBO, a Minor, Debbie Rambo, a/k/a/ Debbie Carrier, Next Friend, and Debbie Carrier, Individually,

and

Department of Social Services, Division of Child Support Enforcement, Respondents–Appellants.

No. 23259.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 8, 2000.

Bradley S. Hinkle, Dexter, for Department of Social Services, Division of Child Support Enforcement.

Wallace L. Duncan, Duncan & Pierce, Poplar Bluff, for Respondent.

### KENNETH W. SHRUM, Judge.

At the request of Billy E. Smith ("Relator"), the circuit court of Butler County, Missouri, ("writ court") entered a judgment prohibiting and enjoining Missouri's Department of Social Services, Division of Child Support Enforcement Unit ("Division") from making further child support collection efforts against Relator, whether for recovery of "state debt" or child support owed to Debbie Carrier ("Mother") individually.[1]  Also, the writ court directed Division to release Relator and absolve him of any administrative action Division may have taken against Relator.  Division appeals, charging the writ court with reversible error in four respects.  We affirm in part; we reverse in part.

---

**1.** All circuit court judgments mentioned in this opinion were entered by the Butler County circuit court.  To differentiate between the various proceedings and judgments entered by that court, we refer to the "paternity court" or "paternity case," the "modification court" or "modification case," and the "writ court" or "writ case."

On August 29, 1980, Mother gave birth to Jeremy W. Rambo. A paternity suit filed in the Butler County circuit court led to an adjudication that Relator was the natural father of Jeremy and Relator's child support obligation was $199 per month beginning March 10, 1982.

Despite the court order, Relator paid child support only sporadically. As a result, there were instances in the 1980's when Mother applied for and received public assistance payments ("AFDC") for Jeremey. The AFDC benefits were paid through the Division of Family Services. As a consequence, Relator became obligated for a "state debt." [2]

Although the record filed with this court is devoid of any records or documents generated by Director which shed light on the size of Relator's state debt, the following evidence is uncontradicted. Relator went to the office of the Butler County circuit court in March 1994 in response to "some sort of settlement [offer] he had received." Division stipulated that Relator "wanted to pay his child support, and they told him that he needed to pay ... $7,210.97 ... and he made that payment" on March 25, 1994.[3]

After Relator made the $7,210.97 payment to the circuit clerk in March 1994, Division issued an "Administrative Order on an Existing Order" ("AOEO") regarding Relator's child support obligation. The first such order came in November 1994. By that order, Division found Relator owed "$14,379.97 for past-due child support" as of November 28, 1994. Next, Division filed an amended AOEO in December 1994 in which it set Relator's past-due child support obligation at $7,139 as of December 8, 1994. Relator took issue with this latter finding and requested an administrative review thereof. After an evidentiary hearing, the hearing officer found: (1) Relator's judicially-established child support obligation was $199 per month, (2) the child support judgment had never been modified, (3) Relators's total child support obligation from March 10, 1982, through December 8, 1994, was $30,-646.99, (4) Relator had only paid $8,382.80 of the court-ordered support, and (5) Relator still owed $22,263.20 as of December 8, 1994.

Relator did not challenge the hearing officer's findings via a petition for review by the circuit court. Instead, Movant filed a motion in the Butler County circuit court ("modification court") seeking to modify the child support provisions of the "paternity case" judgment. Although summoned, neither Mother nor Division attended the modification hearing on August 28, 1996. After hearing evidence, the modification court terminated Relator's obligation to pay child support. The modification court further found "that on March 25, 1994, [Relator] satisfied his financial obligation to the State of Missouri in full, that said sum [$7,210.97] represents the total amount of arrearage owed the State of Missouri and that any further accrual of child support showed to be owed to the State of Missouri is hereby abated." Neither Mother nor Division appealed from the judgment entered in the modification case.

On February 28, 1997, Division issued yet another AOEO. In this order, Division found Relator owed past-due support of $26,376.99 as of February 28, 1997.[4] Rela-

---

**2.** The phrase "state debt" has been part of Missouri's Child Support Enforcement Act (§§ 454.400–.528, RSMo) since its enactment in 1982. Currently, "state debt" is defined as "payment of public assistance by the division ... for the benefit of any dependent child...." § 454.465.1, RSMo Cum.Supp. 1997. Earlier definitions of "state debt" closely track the 1997 version.

**3.** Section 454.415, RSMo 1994 and its predecessors provide that when a court orders support payments for a person who has assigned his or her support rights to the state, the division of child support enforcement "shall so notify the court. Upon such notice, the court shall order all support payments to be made to the clerk of the court as trustee...."

**4.** Although Division's February 28, 1997, AOEO does not reveal how Division arrived at

tor requested an administrative hearing on this AOEO, and a hearing was scheduled for June 12, 1997.

Before the administrative hearing was held, Relator filed this case in which he asked the writ court to command Division "to dismiss said action and to refrain from proceeding further therein." After a hearing at which all evidence came in by stipulation, the writ court interpreted the modification judgment as finding Relator owed no state debt. The writ court also found the modification court did not intend to bar Mother from trying to collect from Relator any child support arrearages owed her individually; that the modification court merely intended to terminate Relator's future child support obligation. Even so, the writ court issued a writ in which it prohibited Division from taking *any* action to collect "for the non-support in this case on behalf of the State of Missouri, ex rel. Jeremy Rambo, a minor, Debbie Rambo, a/k/a Debbie Carrier, next friend, or Debbie Carrier, *individually....*" (Emphasis supplied). The writ court also directed Division to release and absolve Relator from any administrative action Division may have taken against him. This appeal by Division followed.

■ Division's first point on appeal maintains the writ court lacked authority to prohibit Division from assisting Mother in collecting child support arrearages due her individually. We agree.

■ The Child Support Enforcement Act applies both to recipients of public assistance and those not on public assistance. *Shadwick v. Byrd,* 867 S.W.2d 231,

235 (Mo.App.1993). Division's *obligation* to render services to persons who are not recipients of public assistance is found in the explicit language of § 454.425. *Id.* Specifically, § 454.425, RSMo 1994, provides that Division "shall render support services to persons who are not recipients of public assistance as well as to such recipients." [5]

The Division's *authority* to render child support collection services to nonrecipients of public assistance is found, at least in part, in § 454.400.2, RSMo Cum.Supp. 1997. That section provides, *inter alia:*

"2.... [T]he division of child support enforcement shall have the power:

....

"(2) To ... carry out the duties imposed upon it by this or any other law;

....

"(14) To provide services relating to ... enforcement of child support obligations. The division shall provide such services:

....

"(b) To any other child, if an individual applies for such services with respect to such child;

....

"(15) To enforce support obligations established with respect to:

....

"(b) The custodial parent of a child...."

These statutory provisions are clear and unambiguous.[6] To prohibit Division from

---

the $26,376.99 figure as an arrearage amount, we are able to discern that it honored the modification court's judgment and did not include in its AOEO any child support after August 28, 1996, the date the modification case was tried. This we can determine via mathematical computation and by crediting Relator with what the record shows he had paid toward his child support obligation.

5. Section 454.425 was amended effective July 1, 1997, so it now provides that Director "shall render child support services *autho-*

*rized pursuant to this chapter* to persons who are not recipients of public assistance as well as to such recipients." (Emphasis supplied).

6. The effective date of §§ 454.400.2(14)(b) and (15)(b) was July 1, 1997. Accordingly, they were not part of the law when Division issued its February AOEO or when it scheduled the administrative hearing thereon in June 1997. Even so, the quoted provisions were part of the law when the writ court entered its judgment on September 1, 1999.

assisting Mother in collecting the child support which Relator owed her individually, as the writ court has done, directly contravenes what the legislature clearly authorized in the Child Support Enforcement Act.

■ Ordinarily, "[t]he essential function of prohibition is to correct or prevent inferior courts and agencies from acting without or in excess of their jurisdiction." *State ex rel. Douglas Toyota v. Keeter,* 804 S.W.2d 750, 752[1] (Mo.banc 1991). In such an instance, i.e., where an agency's jurisdiction or authority is at issue, prohibition is to be granted only where the usurpation of jurisdiction or an act in excess of same is "clearly evident." *State ex rel. McDonnell Douglas v. Gaertner,* 601 S.W.2d 295, 296[3] (Mo.App.1980) (citing *State ex rel. McCarter v. Craig,* 328 S.W.2d 589 (Mo.banc 1959)).

Here, it is not "clearly evident" that Division acted without authority or in excess of its jurisdiction when it issued the February 28, 1997, AOEO and then scheduled an administrative hearing on that AOEO.[7] To the contrary, these are services that the legislature empowered Division to provide Mother as an aid in collecting child support individually owed her. The only prerequisite to Division's providing such services is that Mother apply therefor. *See* § 454.400.2(14)(b), RSMo Cum.Supp.1997. The judgment must be reversed to the extent it prohibits Division from providing Mother with statutorily authorized child support collection services for arrearages that (1) accrued between March 10, 1982, and August 28, 1996, and (2) are owed Mother individually. Division's first point has merit.

■ Division's second point maintains the trial court erred in issuing the writ because it lacked "subject matter jurisdiction to affect the child support arrearages owed [by Relator] *to the state* and/or

[Mother] individually." (Emphasis added). Continuing, Division argues that § 454.501, RSMo 1994, precluded both the writ court and the modification court from "affect[ing] a final arrearage order entered by ... Division" because Relator did not "exhaust his administrative remedies before seeking review by the trial court as required by §§ 536.110 and 454.501."

We decline to address this point because the issues presented therein have been rendered moot by our decision favorable to Division on Point I, and the fact that Relator's alleged state debt is not an issue. At trial, Division's counsel conceded that Relator's March 1994 payment of child support to the Butler County circuit clerk, satisfied the "state debt" in full.

"THE [WRIT] COURT: The way I understand the facts we pretty much agree, at least close, on the money which when he [Relator] paid the ... $7,200.00 to the clerk's office ... that paid what she [Mother] had received from AFDC?

"MR. MEYR [Division's lawyer]: That's what the hearing officer concluded and I'm going to follow his—

"THE COURT: You don't argue with that either, do you Mr. Duncan [Relator's lawyer]?

"MR. DUNCAN: That he paid the seventy-two hundred?

"THE COURT: That was approximately the amount she received through AFDC?

"MR. DUNCAN: Yes.

"THE COURT: So basically what we are talking about here is debt of not amounts she received through AFDC that the state would be entitled to under the statute, *but monies above and beyond that due on the child support order for ... $199.00 ... a month to [Mother],* is that what we are talking about?

"MR. MEYR: I believe so, Your Honor." (Emphasis added).

---

**7.** *See e.g.* § 454.476.1 which authorizes Division to enter an administrative order in accordance with a previously entered court order upon receipt of prescribed documents and information. Section 454.476.4 gives any party affected by an AOEO the right to an administrative hearing.

"The existence of an actual and vital controversy susceptible of some relief is essential to appellate jurisdiction." *Duffe v. Zych,* 676 S.W.2d 70, 72[1] (Mo.App.1984). When a question presented for decision could not have any practical effect upon any then existing controversy, the question is moot. *Bank of Washington v. McAuliffe,* 676 S.W.2d 483, 487[5] (Mo. banc 1984); *Kracman v. Ozark Elec. Co-op., Inc.,* 816 S.W.2d 688, 690[3] (Mo.App. 1991). The question is no less moot because the issue may arise again at some future time. *Id.*

Having earlier decided that the judgment must be reversed to the extent it prohibits Division from aiding Mother in collecting child support individually owed her, there is no "existing controversy" to address. This follows because (a) in deciding Point I, this court gave Division relief from the judgment as regards the support arrearages owed Mother individually, and (b) there is no state debt which can be affected by the writ of prohibition. Under the circumstances, the issue which Division attempts to raise by Point II is moot since a decision thereon cannot affect any controversy in this matter. *Kracman,* 816 S.W.2d at 691. This court declines to exercise its discretion to make a decision on the question presented by Division's second point relied on. *Id.*[8]

Even so, we deem it necessary to briefly discuss an apparent misconception by Division's counsel about the scope and nature of Division's February 28, 1997, AOEO. In the "facts" section of his brief and in oral argument, counsel characterized the February 1997 AOEO as (1) setting the child support arrearage amount allegedly due Mother, *and* (2) administratively modifying the modification court's judgment, pursuant to § 454.496, by reinstating Relator's support amount at $199 per month.[9] The latter assertion regarding this AOEO is wrong and ignores what the record shows. As we understand Division's February 28, 1997, AOEO, it merely determined child support arrearages due Mother individually that accrued from March 10, 1982, through August 28, 1996. Nothing in this record even remotely suggests that a § 454.496 modification case was commenced or concluded. Without Division's adhering to the § 454.496 modification procedure, it lacked authority to impose a support obligation on Relator. However, because Division's lawyer claimed the February 28, 1997, AOEO imposed on Relator a $199 per month child support obligation beginning February 28, 1997, we affirm that part of the judgment which enjoined and prohibited Division from providing Mother with child support collection services for child support allegedly imposed by Division after August 28, 1996, without complying with § 454.496. The judgment of the trial court is reversed to the extent that it prohibited and enjoined Division from providing Mother with statutorily authorized child support collection services for arrearages that (1) accrued between March 10, 1982, and August 28, 1996, and (2) are owed Mother individually.

PARRISH, P.J., concurs.

MONTGOMERY, J., concurs.

---

**8.** Division's Points III and IV are moot for the same reasons that Point II is moot; consequently, we do not address them.

**9.** Section 454.496, RSMo Cum.Supp.1997, provides a procedure by which a court-ordered child support amount can be administratively modified. For instance, the statute requires the filling of a motion to modify, service of process and a hearing, if requested.

§ 454.496.1. It places on the party seeking modification the burden of proving a modification "is appropriate pursuant to ... 452.370. RSMo." § 454.496.5. Also, it provides that before "an administrative order modifying a court order" can be effective, such order must be "filed with and approved by the court that entered the court order." § 454.496.6.