In the ESTATE OF Gary L. WILSON, Deceased.

Chancey WILSON and Chase Wilson, Minors, by their Guardian ad Litem, Thomas W. Cline, Appellants,

v.

William H. SEEBOLD and Lynne G. Seebold, Respondents.

No. 20832.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 21, 1997.

Motion for Rehearing and Transfer to Supreme Court Feb. 3, 1997.

Application to Transfer Denied Feb. 25, 1997.

Thomas W. Cline, Gainesville, for appellants.

Andrea L. Weiss, Summers, Compton, Wells & Hamburg, St. Louis, for respondents.

CROW, Presiding Judge.

Chancey Wilson and Chase Wilson, minors and sole heirs at law of Gary L. Wilson, deceased, appeal[1] from an order of the Probate Division of the Circuit Court of Ozark County ("the trial court") approving a stipulation for settlement of a claim by Respondents, William H. Seebold and Lynne G. Seebold, against the deceased's estate.[2] The stipulation was signed by Respondents and Pattie Ayers, the deceased's personal representative.[3]

Appellants maintain the trial court (a) lacked jurisdiction because the claim did not satisfy certain requirements of § 473.380.1, RSMo 1994,[4] or, alternatively (b) erred in approving the stipulation because it provides Respondents value in excess of the amount claimed.

The standard of review governing this appeal is set forth in *Estate of Asay v. Asay,* 902 S.W.2d 876, 881[5] (Mo.App.W.D.1995):

"In court-tried cases, such as the compromise of a claim, the appellate court will follow the dictate of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), affirming the decision unless there is no substantial evidence to support the judgment, it is against the weight of the evidence, or it erroneously declares or applies the law.

*Smith v. Snodgrass,* 747 S.W.2d 743, 745 (Mo.App.1988). An order is set aside as being against the weight of the evidence with caution and only upon the firm belief that it is incorrect. *Murphy,* 536 S.W.2d at 32. In assessing the trial court's decision, the evidence is considered in the light most favorable to the judgment. *Smith,* 747 S.W.2d at 745."

The order appealed from here was entered after an evidentiary hearing at which Respondent William H. Seebold ("William")[5] was the lone witness. The facts recounted in this opinion are gleaned from his testimony, considered in the light most favorable to the trial court's order, and from the legal file.

William is in the "boat manufacturing business," having started around 1970. In 1983 he began manufacturing a line of family pleasure boats. However, because "the 10 percent luxury tax brought the marine industry into a slump" in 1992, he ceased producing those models and confined his manufacturing operation to high performance racing boats. Because the "molds" used in producing the decks and hulls of the discontinued models were no longer needed, William and his wife, Respondent Lynne G. Seebold, offered the molds for sale.

In November, 1994, Gary L. Wilson ("Wilson"), a boat manufacturer himself, phoned William about buying the molds. Wilson came to Respondents' place of business, examined the molds, and commenced negotiations with William.

1. Appellants bring this appeal by their guardian ad litem.

2. In *Smith v. Snodgrass,* 747 S.W.2d 743 (Mo. App.S.D.1988), six of the deceased's children and heirs appealed from an order approving a compromise of an obligation *owed to the estate. Id.* at 744. The compromise was entered into per § 473.277, RSMo 1986. *Id.* This court held the order appealable. *Id.* at 745[3]. Consistent with the rationale in *Smith,* we hold the order appealed from here is appealable and Appellants have standing to appeal.

3. Section 473.427, RSMo 1994, reads:

"When a claim against the estate has been filed ..., *the creditor* and personal representative, if it appears for the best interest of the estate, may compromise the claim, whether

due or not due, absolute or contingent, liquidated or unliquidated."

4. Section 473.380.1, RSMo 1994, reads:

"No claim other than for costs and expenses of administration shall constitute a claim against an estate unless it is in writing, stating the nature and amount thereof, if ascertainable, and is signed by the claimant, or by some person for him who has knowledge of the facts, stating that to the best of his knowledge and belief he has given credit to the estate for all payments and offsets to which it is entitled and that the balance claimed is justly due."

5. For brevity and clarity, we henceforth refer to the individuals in this narrative by forename or surname, as convenient. We mean no disrespect.

By telephone at a later date, Wilson and William agreed Wilson would buy the molds for $100,000. Wilson would pay $10,000 at the time he began moving the molds from Respondents' place of business to his. Wilson would pay another $10,000 within sixty days and the balance within twenty-four months. Additionally, Wilson would produce one hull and deck, without engines, for a 32–foot boat and give it to Respondents.

William had his lawyer prepare a written contract on those terms.

On December 15, 1994, Wilson, accompanied by a driver, arrived at Respondents' place of business in a "boat transporter, which is a semi-tractor trailer truck, flatbed," and picked up some of the molds. Wilson and Respondents signed the contract, and Wilson paid the required $10,000. Wilson also orally agreed that date to buy a Hyster "forktruck" [6] from Respondents for $11,000.

A few weeks later, Wilson arranged by phone to pick up some more molds.

The same tractor trailer unit and driver, accompanied by Wilson's shop foreman, arrived at Respondents' place of business on January 10, 1995, and picked up some more molds. The foreman gave William a $10,000 check representing the second payment required by the contract, and also gave William an $11,000 check for the forktruck. Both checks were honored by the drawee.

The forktruck was left at Respondents' place of business because there were more molds to be picked up in the future and the forktruck was needed to load them.

On March 1, 1995, Wilson was killed in an accident.[7]

After Wilson's death, William told John Bruffett ("Bruffett"), the lawyer for Wilson's personal representative, Pattie Ayers ("Ayers"), that he—William—still had some items Wilson had bought. William offered "to turn those over to the estate."

On July 10, 1995, Respondents filed a claim against Wilson's estate in the trial court. The claim was not signed by either Respondent. The claim alleged, *inter alia*, that $100,000 was due Respondents from the estate "on account of the contract that is attached hereto." Attached to the claim was a copy of the contract signed by Wilson and Respondents on December 15, 1994.

Appellants, by their guardian ad litem, filed a motion asking the trial court to "dismiss" Respondents' claim because it was "unsigned and bears no verification ... as required by ... Section 473.380.1." [8] Consequently, reasoned Appellants, the trial court "lacks jurisdiction to proceed on said claim."

The trial court denied Appellants' motion to dismiss.

Thereafter, Respondents and Ayers entered into the stipulation referred to in the first paragraph of this opinion. We henceforth refer to the stipulation as "the compromise." Provisions of it relevant to this appeal are set forth marginally.[9]

---

6. In the record, this item is also called a "forklift."

7. At trial, Appellants' guardian ad litem told the court Wilson "die[d] in a plane crash." The application for letters of administration states Wilson died intestate, left no surviving spouse, and Appellants are his only children.

8. The version of § 473.380.1 in effect when Respondents filed the claim is the version in RSMo 1994, quoted in footnote 4, *supra*. It does not require that a claim be verified.

9. The compromise designates Respondents as "Seebold." It reads, *inter alia:*
"1. ...
2. [The] ... contract which is the basis for the Seebold claim is in the total amount of $100,000.00 which provided for a $10,000.00 payment to Seebold at the time of the execu-tion of the contract, and an additional $10,-000.00 be paid within sixty (60) days after execution of the contract; thereafter, the $80,-000.00 balance ... was to be paid over a period of two years.
3. ... pursuant to paragraph no. 4 of the contract and in addition to the ... purchase price ..., the buyer, (Gary Wilson) was to deliver one hull and deck ... with no additional charge to Seebold, within two years of the date of said contract; Ayers has researched sales materials and believes the value of the hull and duck [sic] due to Seebold to be ... $10,000.00.
4. That Seebold and Ayers agree that prior to the death of Gary Wilson, a total of $20,-000.00 was paid to Seebold, and that there is a balance due on the contract to Seebold in the amount of $80,000.00; and further, that Seebold is entitled to the hull and deck pursuant to paragraph no. 4 of the contract, which the

With matters in that posture, the trial court heard evidence on February 21, 1996. Appellants appeared by their guardian ad litem[10]; Respondents appeared in person with counsel; Ayers appeared in person with her lawyer, Bruffett. As noted earlier, William was the lone witness. He was questioned by only his lawyer and Appellants' guardian ad litem. Bruffett asked William nothing, presented no evidence for Ayers, and made no argument.

The trial court thereafter entered an order approving the compromise. This appeal followed.

▮ Appellants' first point relied on:

"The Court erred in approving the Seebold claim against the Estate, because the claim presented was unsigned; was not verified; and did not allow credits or offsets due the Estate, in that the signature of the claimant or some person for him with knowledge of the facts is a statutory prerequisite for validity, thus the Court was deprived of jurisdiction to proceed."

Appellants begin their argument by citing *State ex rel. Nollmann v. Gunn*, 513 S.W.2d 710 (Mo.App.1974). That case, like this one, involved a claim against a deceased's estate. The version of § 473.380.1 in effect when the claim was filed in *Nollmann* was the version in RSMo 1969. It is set forth thus in the opinion:

> "No claim shall be allowed against an estate unless it is in writing, stating the nature and amount thereof, if ascertainable, and is *accompanied by an affidavit of the claimant*, or of some person for him who has knowledge of the facts, stating ... to the best of his knowledge ... he has given credit to the estate for all payments and offsets to which it is entitled and ... the balance claimed is justly due." (Emphasis supplied.)

*Id.* at 712.

*Nollmann* held:

> "[I]f the claim is not accompanied by the required statutory affidavit, the probate court does not have jurisdiction to hear evidence thereon or to allow or to classify the claim."

*Id.* at [1].

Appellants concede that § 473.380.1 was

buyer (Gary Wilson) will not be able to deliver to Seebold as part of said contract.

5. The parties further agree that Seebold has in their possession at this time certain templates, patterns and mold [sic] which is to be delivered pursuant to the contract ... between Seebold and Gary Wilson.

6. The parties agree that since the date of the filing of the Seebold claim ..., that Seebold has made available to Ayers the templates, patterns and molds which Seebold has in their possession, and that Ayers has had permission, and has permission to take possession of said items at the Seebold business ..., and that said items were being retained by Seebold because the buyer (Gary Wilson) did not have sufficient hauling capacity to transport these particular items whenever the balance of the goods sold under the contract were delivered to Wilson. Attached hereto as Exhibit 'D' is a complete list of the templates, patterns and molds which Seebold is to deliver to Ayers.

7. That as a separate transaction between Seebold and Gary Wilson, and contemporaneous with the execution of the sales contract ..., Wilson purchased from Seebold a forklift that was paid for by check ... in the amount of $11,000.00.... That the forklift is currently in the possession of Seebold, and has never been in the possession of Gary Wilson or Ayers, and was in the possession of Seebold for the reason that Gary Wilson had not taken possession of the forklift, as the forklift was to be transported by Gary Wilson at the same time that Gary Wilson was to take possession of the additional items set forth on Exhibit 'D'.

8. That the parties have agreed that Seebold, in satisfaction of paragraph no. 4 of the sales contract, will keep possession and retain ownership of the forklift....

9. That the forklift ... is ... of a value of $5,000.00....

10. That ... subject to Court approval, Seebold and Ayers agree to settle the Seebold claim as follows:

(a) Ayers will consent to the Court entering a claim [sic] in the amount of $80,000.00.

(b) Seebold will agree to deliver possession of the templates, patterns and molds in Seebold's possession to Ayers, on 24 hour notice of intent to take possession of said items delivered either by Ayers or her attorney to Seebold or Seebold's attorney.

(c) That Seebold will retain possession of the forklift in satisfaction of paragraph no. 4 of the sales contract as Ayers is unable to fulfill that provision of said contract.
...."

10. Appellants' guardian ad litem is a lawyer.

amended in 1980 [11] and that the present version [12] contains no requirement that a claim be verified. Appellants also concede that since the 1980 amendment, no case has addressed the issue of whether a court has jurisdiction of a claim that is not signed by the claimant or by someone for him who has knowledge of the facts.

However, Appellants direct us to the following segment of § 575.060, RSMo 1994, which has been in effect since January 1, 1979:

"1. A person commits the crime of making a false declaration if, with the purpose to mislead a public servant in the performance of his duty, he:

(1) Submits any written false statement, which he does not believe to be true

. . . .

(b) On a form bearing notice, authorized by law, that false statements made therein are punishable. . . ."

Appellants point out that the claim filed by Respondents was on a form stating, *inter alia:*

"Claimant states that to the best of claimant's knowledge and belief, credit has been given to such estate for all payments and offsets to which it is entitled and that the balance claimed as stated above is justly due.

The foregoing is made under oath or affirmation and its representations are true and correct to the best knowledge and belief of the undersigned, subject to the penalties of making a false affidavit or declaration."

Consequently, argue Appellants:

"The combination of RSMo 575.060; the requirement that the claim must be signed to constitute a claim against an estate as per RSMo 473.380.1; and the affirmation contained on the claim form have the exact same effect as the pre–1980 requirement of an affidavit. Accordingly, the rationale that claims presented that do not meet the basic statutory requirements convey no jurisdiction on the Court should continue to apply."

While there may be some measure of logic in Appellants' argument, it fails to acknowledge subsection 2 of § 472.080, RSMo 1994, a part of the probate code.[13] Section 472.080 reads:

"1. Except as otherwise specifically provided in this code or by supreme court rule, every document filed with the court under this code, including but not limited to applications, petitions, claims, and demands for notice, shall be signed by or on behalf of the petitioner or claimant, and shall contain a statement that it is made under oath or affirmation and that its representations are true and correct to the best knowledge and belief of the person signing same, subject to the penalties of making a false affidavit or declaration.

2. *No defect of form or substance in any document invalidates any proceeding after judgment on the document."* (Emphasis added.)

The above statute has read that way since January 1, 1981.[14]

The Supreme Court of Missouri applied an earlier version of § 472.080.2 in *Estate of Basler v. Delassus,* 690 S.W.2d 791 (Mo. banc 1985). That case, like *Nollmann,* 513 S.W.2d 710, and the instant case, involved a claim against a deceased's estate. 690 S.W.2d at 793. The claim was not verified. *Id.* The administrator ad litem and the claimant negotiated a settlement. *Id.* Two devisees objected. *Id.* Nonetheless, the trial court approved the settlement. *Id.*

On appeal by the objecting devisees, one of the attacks on the settlement was that the claim from which the settlement arose was not verified. *Id.* at 795. The Supreme

---

11. Laws of Missouri 1980, S.B. No. 637, pp. 446–86.

12. Footnote 4, *supra.*

13. Section 472.010(5), RSMo 1994, states: " 'Code' or 'probate code' means chapters 472, 473, 474 and 475, RSMo[.]"

14. Laws of Missouri 1980, S.B. No. 637, pp. 446–86. That is the same legislation that amended § 473.380.1 by deleting the requirement that a claim against an estate be accompanied by an affidavit.

Court declared the objection "no serious obstacle." *Id.* The opinion explained:

"The absence of verification is effectively cured by the judgment following the hearing, approving the compromise."

*Id.* at 795[9]. In support of that holding, the Supreme Court cited the version of § 472.080.2 in RSMo 1978. *Id.* at n. 4. That version read:

"No defect of form or substance in any petition, nor the absence of a petition, invalidates any proceedings after judgment on the application."

That version is the same as the version in RSMo 1994 (quoted earlier) except the phrase "petition, nor the absence of a petition," in the version in RSMo 1978 has been replaced by the single word "document" in the version in RSMo 1994.

In deciding *Basler*, 690 S.W.2d 791, the Supreme Court did not refer to *Nollmann*, 513 S.W.2d 710. The latter case, as we have seen, held the absence of the affidavit required by § 473.380.1, RSMo 1969, deprived the probate court of jurisdiction to allow or classify a claim against an estate.

We cannot ascertain from *Basler* when the claim there was filed, but we assume it was filed while § 473.380.1 still required a claim against an estate to be accompanied by an affidavit. Were it otherwise, the Supreme Court would have had no need to invoke § 472.080.2, RSMo 1978, to defeat the objection that the claim was not verified.

We are constitutionally bound to follow the last controlling decision of the Supreme Court of Missouri. Mo. Const., Art. V, § 2 (1945); *Godfrey v. Union Electric Co.*, 874 S.W.2d 504, 505[2] (Mo.App.E.D.1994). Consequently, we must honor *Basler's* holding that by reason of § 472.080.2, RSMo 1978, the absence of verification of a claim against a deceased's estate was cured after judgment. 690 S.W.2d at 795[9].

*Basler*, coupled with the version of § 472.080 in RSMo 1994 (which pertains to claims filed under the probate code, and which provides in subsection 2 that no defect of form or substance in any such document invalidates any proceeding after judgment on the document), persuades us that we would err if we held, at this stage of the dispute (after the trial court has heard evidence and entered an order approving the compromise of Respondents' claim), that the trial court lacked jurisdiction to enter the order because of the flaws in the claim about which Appellants complain in their first point.[15] What action the trial court might have been authorized to take to enforce § 473.380.1, RSMo 1994,[16] prior to trial is not an issue in this appeal, hence we say nothing on that subject.

Applying the version of § 472.080.2 in RSMo 1994 to Appellants' first point like the Supreme Court applied the version of § 472.080.2 in RSMo 1978 in *Basler*, 690 S.W.2d at 795[9], we hold Appellants' first point is without merit.

Appellants' second point:

"The Court erred in approving the Stipulation for Settlement of the Seebold claim because the stipulation and judgment provides Seebold the value of $126,000 on a claim requesting $100,000, in that the Court's judgment was against the weight of the evidence and exceeded the relief requested."

■ Appellants' theory that the compromise provides Respondents $126,000 in value on a $100,000 claim is explained in the argument following the point. According to Appellants' argument, Respondents will end up with: (1) $31,000 paid them by Wilson before his death,[17] (2) the forktruck, worth $15,000, and (3) $80,000 from Wilson's estate.

---

15. One of the alleged flaws about which Appellants complain is that Respondents' claim "was not verified." However, Appellants' reply brief concedes: "The Legislature has made it easier to present a claim in probate court by eliminating the requirement of an affidavit." We noted in footnote 8, *supra*, that § 473.380.1, RSMo 1994, which was in effect when Respondents filed their claim, does not require that a claim be verified.

16. Footnote 4, *supra*.

17. Ten thousand dollars on December 15, 1994, and twenty-one thousand dollars on January 10, 1995. The latter sum, as recounted earlier, consisted of the second $10,000 payment on the contract to buy the molds and the agreed $11,000 price for the forktruck.

Our first observation about Appellants' second point is that Respondents' claim did not involve the forktruck. Respondents' claim pled only that $100,000 was due them on the contract they and Wilson signed December 15, 1994, a copy of which was attached to the claim.

The reason Respondents' claim did not mention the forktruck is obvious. Wilson paid Respondents the agreed $11,000 for it on January 10, 1995; however, he did not pick it up from them that date because he still had molds to pick up from them in the future and the forktruck would be needed to load the molds. Thus, when Wilson died, his forktruck was still in Respondents' possession.

Our second observation about Appellants' second point is that when Wilson died, he owed Respondents more than just the unpaid $80,000 on the contract of December 15, 1994. As we have seen, the contract required him to provide Respondents a hull and deck for a 32–foot boat. He never did.[18]

Consequently, the reason Respondents claimed $100,000 was due them on the contract is evident. Eighty thousand dollars remained unpaid on the contract, and Respondents had not received the hull and deck to which the contract entitled them.

An alert reader will recall that paragraph 3 of the compromise[19] states Ayers believes the value of the hull and deck to be $10,000. Paragraph 9 of the compromise states the value of the forktruck is $5,000. The record indicates that figure is based on an appraisal by a third party, Shipping Utilities, Inc., of St. Louis, Missouri, dated November 15, 1995.

William testified he agreed with Bruffett that in return for abandoning the contractual right to receive the hull and deck, Respondents would keep the forktruck. William avowed that was "a roughly equal trade."

However, William added he thought the $5,000 appraisal on the forktruck was "extremely low," and he could "sell it tomorrow for $15,000."

If (a) the forktruck was worth only $5,000 at the time of the compromise, and (b) the value of the hull and deck due Respondents was $10,000, the compromise is favorable to the estate. That is because Respondents' claim would amount to $90,000 ($80,000 due on the contract of December 15, 1994, plus $10,000 in lieu of the hull and deck Respondents were to receive from Wilson per the contract), but the estate would be parting with only $85,000 in value ($80,000 to be allowed as a claim plus the forktruck, worth $5,000[20]).

Appellants' premise that the compromise provides Respondents $126,000 in value is patently wrong. The $31,000 Wilson paid Respondents before he died[21] was not paid pursuant to the compromise. The compromise provides Respondents are to receive only two items of value: (1) their claim shall be allowed in the amount of $80,000, and (2) ownership of the forktruck shall revert to them. Even viewing the evidence favorably to Appellants, the most the forktruck is worth is $15,000, the sum William testified he could receive if he sold it. That figure, coupled with the $80,000 to be allowed as a claim, totals $95,000, which is $5,000 less than the amount of Respondents' claim.

The law governing approval of the compromise is set forth in *Asay*, 902 S.W.2d at 880–81:

"A compromise, by its nature, is not based on absolute proof of liability. Rather, it is based on uncertainty sufficient to convince both the creditor and the personal representative to make concessions.... 'The whole purpose of compromise would be defeated if it were necessary to try the whole case to determine whether the compromise should be approved.' *Basler*, 690

18. Appellants argued in the trial court that Wilson's death nullified that duty; however, they do not pursue that contention in this appeal.

19. Footnote 9, *supra*.

20. We are mindful Wilson bought the forktruck from Respondents for $11,000 on January 10,

1995. If that price was too high, Wilson made a bad bargain. However, the sale was consummated that date, hence the forktruck belonged to Wilson, not Respondents, when Wilson died.

21. Footnote 17, *supra*.

S.W.2d at 797. To require one to prove, in a compromise situation, that the estate was liable for the exact amount paid would therefore be illogical....

[T]he probate division only need conclude that the settlement was in the best interest of the estate; not that the estate was necessarily liable for the amount paid."

Applying those principles, and viewing the evidence in the light most favorable to the trial court's order, we reject Appellants' contention that the order "was against the weight of the evidence and exceeded the relief requested."

The trial court found the compromise "fairly compromises the matter of delivery of a hull and deck, templates, patterns, molds, and forklift." That finding is supported by substantial evidence and is not against the weight of the evidence. In approving the compromise, the trial court neither erroneously declared nor erroneously applied the law.

Appellants' second point is denied, and the order approving the compromise is affirmed.

MONTGOMERY, C.J., and PARRISH, J., concur.