In the Matter of Mildred Ruth
DUVALL, Respondent,

Missouri Department of Health and
Senior Services, Respondent,

Glenda L. Winkler, Public Admin-
istrator of Randolph County,
Missouri, Respondent,

v.

D. Lynn Duvall and Norman
Staley, Appellants.

No. WD 64464.

Missouri Court of Appeals,
Western District.

Sept. 27, 2005.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 1, 2005.

Application for Transfer Denied
Dec. 22, 2005.

Daniel R. Dunham, Columbia, MO, for appellants.

Yvette Hipskind, St. Louis, Patricia Watkins, James M. McCoy, Co–Counsels, Jefferson City, MO, for respondents Department of Health and Human Services.

Phillip C. Brown, Moberly, Dale L. Linneman, Co–Counsel, Keyetesville, MO, for respondent Duvall.

Glenda L. Winkler, Moberly, MO, pro se.

Before JOSEPH M. ELLIS, Presiding Judge, PAUL M. SPINDEN, Judge and VICTOR C. HOWARD, Judge.

JOSEPH M. ELLIS, Judge.

This is an appeal from an August 4, 2004 final judgment and order of the Probate Division of the Circuit Court of Randolph County granting a petition declaring Mildred Ruth Duvall ("Ruth") totally incapacitated and legally disabled and appointing the Public Administrator of Randolph

County as the guardian of her person and the conservator of her estate.[1] We affirm.

On October 9, 2002, the Department of Health and Senior Services received a hotline call regarding Ruth with allegations that she was being financially exploited by a nephew. The Department initiated an investigation and Cindy Smith ("Smith"), a Department employee, was assigned by the Director of the Department to conduct it. By the conclusion of her investigation, Smith reported numerous concerns about Ruth's care and welfare, not the least of which was that Ruth would be discharged from her skilled care facility because of accumulated unpaid charges for her care, and consequently would suffer serious physical harm. Among other things, Smith was also concerned: (1) that Ruth would lose her eligibility for Medicaid, which paid for much of her care, because of various property transfers arranged by Ruth's deceased husband's nephew, D. Lynn Duvall; (2) that Ruth was being financially exploited and her estate subjected to waste; (3) that Ruth would suffer possible physical harm because she was not receiving the prescription drug Exelon as recommended by her doctor; and (4) that Ruth's assets were not being used to pay for her needs and expenses.

As a result of the investigation, on July 11, 2003, Smith filed a Petition for Appointment of Guardian and/or Conservator, seeking appointment of the Randolph County Public Administrator as Ruth's guardian and conservator. On August 28, 2003, the probate court appointed Attorney Phillip Brown ("Attorney Brown") to represent Ruth in the proceedings on the petition.

On October 20, 2003, the court ordered that Ruth undergo a physical and mental examination and authorized Dr. Syid Rashid to conduct it. On October 22, 2003, Dr. Rashid performed the examination, and, in an affidavit filed on October 24, 2003, opined that, to a reasonable degree of medical certainty, Ruth suffered from dementia and was unable to receive and evaluate information or communicate decisions to such an extent that she lacked the capacity to meet essential requirements for food, clothing, shelter, safety, and other care such that serious physical injury, illness, or disease was likely to occur. Dr. Rashid's affidavit also stated that Ruth lacked the capacity or ability to manage her financial resources, could understand neither her rights nor the nature or consequences of the proceedings, would not be able to effectively participate in a hearing, and that her mental and physical condition would continue to deteriorate in the future. In particular, Dr. Rashid opined that Ruth was incapable of understanding and making an informed decision concerning her rights to be represented by an attorney of her choice as opposed to a court-appointed attorney, to a jury trial, to present evidence on her behalf or to remain silent, to cross-examine the witnesses against her, to have the hearing open or closed at her election, or to be present at a hearing.

On November 7, 2003, interested persons D. Lynn Duvall ("Lynn") and Norman Staley, collectively referred to as "Appellants," filed objections to the petition, followed by a flurry of other pretrial mo-

---

1. At the time the probate court's judgment and order was entered and the notice of appeal was filed, the Public Administrator of Randolph County was Martha L. Creed. Her term of office expired on December 31, 2004. The following day, Ms. Creed's successor in that office, Glenda L. Winkler, was issued appropriate letters and was appointed to serve as the successor guardian of Ruth's person and the successor conservator of her estate. Pursuant to Rule 52.13(d), Ms. Winkler was substituted as a Respondent in this matter by operation of law.

tions, including a Motion to Dismiss and alternative Motion to Strike (November 7, 2003), Supplemental Objections to Petition and Second Motion to Dismiss (January 16, 2004),[2] and a Third Motion to Dismiss (June 29, 2004, overruled on July 6, 2004). On December 12, 2003, Appellants also filed their own Petition for Appointment of Guardian and Conservator with the probate court, which they subsequently voluntarily dismissed without prejudice on January 21, 2004, after service on Ruth by the Randolph County Sheriff's office on January 6, 2004.

On July 9, 2004, Attorney Brown filed a Waiver with the probate court in which he waived Ruth's rights to a jury trial and to attend any hearings inasmuch as he concurred with Dr. Rashid's assessment that, due to her physical and mental condition, Ruth would be unable to understand and assist with the proceedings in any meaningful way. Thereafter, on July 23, 2004, the court conducted an evidentiary hearing, during which Attorney Brown explained to the court that although he had met with her several times, Ruth "could not communicate with [him] in any manner, including identifying Lynn Duvall or where she was at." At the conclusion of the hearing, the probate court issued its Judgment of Incapacity and Disability and Order Appointing Guardian and Conservator, finding Ruth to be totally incapacitated and legally disabled. The court also found that Smith and Attorney Brown had established "good cause shown" under section 475.050[3] not to appoint Lynn as the guardian of Ruth's person and the conservator of her estate, so the court appointed the Public Administrator of Randolph County instead, as requested in the peti-

tion. Finally, the probate court ordered that costs and $5,459 in attorney's fees were to be paid from the conservatorship estate. This timely appeal followed. Any additional facts necessary to disposition of the appeal will be supplied as needed later in this opinion.

At the outset, we note that on May 2, 2005, before this case was submitted, Appellants notified this court that Ruth died at Loma Linda Health Care in Moberly on April 26, 2005, attaching a certified copy of her death certificate to their "Suggestion of Death of Mildred Ruth Duvall and Motion for Review, Remand and Mandate to Vacate and Dismiss Proceedings for Lack of Jurisdiction." The same day, opposing counsel filed a "Motion to Dismiss Appeal as Moot." We took both motions with the case.

■ "A threshold question in any appellate review of a controversy is the mootness of the controversy." *State ex inf. Reed v. Reardon*, 41 S.W.3d 470, 473 (Mo. banc 2001) (internal quotation marks omitted). Appellants bring six points on appeal. Four of them (Points I, II, III, and V) purport to advance claims that the probate court lacked jurisdiction to enter the judgment and order, while the other two (Points IV and VI) raise substantive challenges to the court's actions. Although they request a full review of all six points on appeal, in their motion, Appellants further suggest that, at a minimum, this court should review those points raising jurisdictional issues and subsequently issue an order of vacatur to the extent we were to hold the probate court's final judgment and order to be void for lack of jurisdic-

---

2. The probate court overruled these motions on April 6, 2004. Appellants then sought a writ of prohibition in this court, which was denied on May 27, 2004. A subsequent writ

application to the Missouri Supreme Court was denied on June 23, 2004.

3. Unless otherwise indicated, all statutory references are to RSMo 2000.

tion. In contrast, Smith's motion requests that we dismiss the appeal in its entirety, citing authority from foreign jurisdictions holding that in general, when a ward or protectee dies during the pendency of an appeal, reversal or affirmance of the probate court's judgment of incapacity or disability becomes merely advisory and the appeal presents only moot questions.

We agree with Appellants that Ruth's death during the pendency of this appeal does not render moot the purported jurisdictional issues raised in Points I, II, III, and V of their brief, because if any of them were found to have merit, the probate court's judgment and order would both be void *ab initio* and vacatur would be appropriate. *See, e.g., State ex rel. Green v. James,* 355 Mo. 223, 195 S.W.2d 669, 673 (banc 1946) (noting that where a court renders judgment without jurisdiction of the parties or the subject matter, the judgment is null and void *ab initio* and a motion to vacate is a proper remedy).

Points IV and VI are a different story, however. In Point IV, Appellants claim that Ruth received substandard representation throughout the guardianship and conservatorship proceedings from her court-appointed counsel, Attorney Brown. They also argue that the probate court erred in appointing Brown to represent Ruth since he had a conflict of interest. In Point VI, Appellants contend the probate court erred in appointing the Public Administrator of Randolph County as the guardian of Ruth's person and the conservator of her estate because the court should have appointed one of them as guardian and conservator instead.

With regard to Point IV, since any statutory or constitutional right Ruth may have had to effective assistance of counsel during the guardianship and conservatorship proceedings died with her, any decision by this court on that claim would not have any practical effect upon any now-existing controversy. Moreover, Ruth's death made any decision by this court as to the quality of representation she received during those proceedings, or whether Attorney Brown should have been appointed as her attorney, wholly unnecessary. Likewise, as to Point VI, it is now also unnecessary for us to decide whether the probate court erred in failing to appoint either of the Appellants as the guardian of Ruth's person and the conservator of her estate. Indeed, as we "do not decide questions of law disconnected from the granting of actual relief," *State ex rel. Chastain v. City of Kansas City,* 968 S.W.2d 232, 237 (Mo.App. W.D.1998), any such determination on the merits of Point VI would be merely hypothetical or advisory. Accordingly, both Points IV and VI are moot. *See Reed,* 41 S.W.3d at 473.

Appellants nevertheless argue that Points IV and VI are not moot because they "affect whether the costs of the underlying proceeding, including court appointed attorney fees, are valid claims against the [conservatorship] estate, and the necessity and authority of the purported conservator to wind up the conservatorship estate and make a final settlement under statutes applicable to conservators upon the death of their protectees." However, none of those things are at issue in this appeal inasmuch as it would be meaningless to appoint another conservator at this point and neither Point IV nor Point VI assign as error the probate court's decision to order payment of costs and attorney's fees from the conservatorship estate.

In the alternative, Appellants also argue that Points IV and VI should be decided due to their public interest and importance and the likelihood those issues will recur while consistently evading appel-

late review. Although appellate courts have "discretion to review a moot case when the case presents an unsettled legal issue of public interest and importance of a recurring nature that will escape review unless the court exercises its discretionary jurisdiction," this exception to the mootness doctrine is narrow. *Chastain,* 968 S.W.2d at 237. "If an issue of public importance in a moot case is likely to be present in a future live controversy practically capable of appellate review, then the 'public interest' exception does not apply." *Id.* As we "do not believe that subsequent cases presenting some or all of the same issues [raised in Points IV and VI] will necessarily evade this court's scrutiny," *id.* at 239, we decline to exercise our discretion to review them. Accordingly, both motions are granted in part and denied in part. *See, e.g., Smith v. State ex rel. Rambo,* 30 S.W.3d 925, 929–30 & n. 8 (Mo.App. S.D.2000) (concluding that three points were moot but addressing the one remaining viable issue); *Trinity Lutheran Church v. Lipps,* 68 S.W.3d 552, 560 (Mo. App. E.D.2001) (declining to adjudicate the issues that had become moot but deciding the remainder of the case).

██ "Review of the appointment of a guardian or conservator is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the court is affirmed unless: (1) no substantial evidence supports it; (2) it is against the weight of the evidence; or (3) it erroneously declares or applies the law." *In re Beyersdorfer,* 59 S.W.3d 523, 525 (Mo. banc 2001). This court will set aside the judgment of the probate court on the ground that it is against the weight of the evidence "only when we have a firm belief that the judgment is wrong." *In re Turnbough,* 34 S.W.3d 225, 227 (Mo.App. E.D. 2000). We give due regard to the probate court's opportunity to judge the credibility of witnesses and to disbelieve the testimony of any witness, even when it is uncontradicted, because it is in a better position than this court "to resolve their sincerity, character, and other trial intangibles that may not be shown by the record." *In re Moreau,* 18 S.W.3d 447, 449 (Mo.App. S.D. 2000). Moreover, we observe that none of the parties requested that the probate court make specific findings of fact or conclusions of law, and only those required by statute were issued. "All other factual issues are, therefore, deemed to have been found in accordance with the result reached, and the judgment must be affirmed under any reasonable theory supported by the evidence." *In re Brown,* 710 S.W.2d 402, 403 (Mo.App. E.D.1986).

In Point I, Appellants contend that the probate court lacked subject matter jurisdiction to enter its final judgment of incapacity and disability and order appointing a guardian and conservator because the petitioner lacked statutory standing or authority to initiate the proceeding. We disagree.

██ Section 475.060 provides that "[a]ny person may file a petition for the appointment of himself or some other qualified person as guardian of a minor or guardian of an incapacitated person." Likewise, section 475.061.1 states that "[a]ny person may file a petition in the probate division of the circuit court of the county of proper venue for the appointment of himself or some other qualified person as conservator of the estate of a minor or disabled person." Section 475.061.2 permits a petition for the appointment of a conservator to be combined with a petition for the appointment of a guardian.

The "Petition for Appointment of Guardian and/or Conservator" filed by Smith begins as follows: "COMES NOW Petitioner Cindy Smith, SSW, Randolph Coun-

ty Department of Health and Senior Services, Division of Senior Services, and states: ..." The petition is signed by Smith, and prays that various forms of relief be granted to "Petitioner." As clearly shown on the face of the petition, the "Petitioner" in this matter is Smith. The probate court ruled that since Smith is a natural person,[4] she was authorized to file her combined Petition for Appointment of Guardian and/or Conservator in this matter pursuant to sections 475.060, 475.061.1, and 475.061.2.

Appellants claim this ruling was erroneous, arguing that although "Cindy Smith could have filed a petition under Chapter 475 in her individual capacity as a 'person,' " she "did not do so." Pointing to Paragraph 8 of the petition, which states: "The Division of Senior Services is authorized to bring this request pursuant to Section 660.285 RSMo.2000," [5] Appellants contend that in filing the petition, Smith was acting in her official capacity as a designee of the Director of the Missouri Department of Health and Senior Services, not in her capacity as a natural person.

Although this is a somewhat creative approach to the issue, we find it unpersuasive because it ignores section 475.085.1, which clearly indicates that "a public employee acting in his official capacity" is a "person" entitled to file a petition under Chapter 475:

> The costs of proceedings as to incapacity or disability of any person shall be paid from his estate if he is found incapacitated or disabled or, if his estate is insufficient, costs shall be paid by the county; but if the person is found not to be incapacitated or disabled the costs shall be paid *by the person filing the petition, unless he is a public employee acting in his official capacity,* in which case the costs shall be paid by the county.

*§ 475.085.1* (emphasis added).

Appellants further argue that even if Smith was a "person" under sections 475.060 and 475.061.1, she still lacked authority to file the petition because section 660.285.1 trumps those statutes and there was insufficient evidence that the investigation conducted by Smith resulted in a determination that Ruth's situation pre-

---

4. Chapter 475 does not contain a legislative definition of the word "person." However, section 472.010(24) states that as used in the probate code, the word " '[p]erson' includes natural persons and corporations[.]'' Meanwhile, section 475.020 expressly makes the provisions of Chapter 472 applicable to guardianships and conservatorships "unless therein restricted to decedents' estates" or "where no rule is set forth for guardianships and conservatorships in sections 475.010 to 475.370[.]'' Thus, the word "person," as used in section 475.060 and section 475.061.1, includes natural persons. Since sections 475.060 and 475.061.1 refer to "any person," *all* natural persons, without limitation or restriction, are authorized to file a petition in the probate division of the circuit court of the county of proper venue for the appointment of a guardian of a minor or an incapacitated person and/or conservator of the estate of a minor or disabled person. *See Wormington v. City of Monett*, 356 Mo. 875, 204 S.W.2d 264,

267 (banc 1947) (observing that unless modified by context, the word "any" is "all comprehensive" and "is the equivalent of 'every' and 'all' "); *North v. Hawkinson*, 324 S.W.2d 733, 744 (Mo.1959) (noting that the word "any" has been described as one of "the most comprehensive words in the English language" and admits of "no apparent exceptions.")

5. Section 660.285.1, RSMo Supp.2002, states: "If the director determines after an investigation that an eligible adult is unable to give consent to receive protective services and presents a likelihood of serious physical harm, the director may initiate proceedings pursuant to ... chapter 475, RSMo, if appropriate." Section 660.250(4) states that as used in section 660.285.1, RSMo Supp.2002, "director" means the "director of the department of health and senior services or his or her designees."

sented a "likelihood of serious physical harm" as that phrase is defined in sections 660.250(10)(a)-(d). In support of this argument, Appellants cite *State ex rel. Foltz v. Ahr*, 666 S.W.2d 777 (Mo.App. W.D.1983). In *Foltz*, this court held that, where several statutes under consideration concern the same subject matter, they are in *pari materia* and must be construed together even if found in different chapters. *Id.* at 780. "If possible, effect must be given to each clause and where one statute deals with a subject in general terms and another in specific terms, the two should be harmonized when reasonable, but to the extent of any discord, the definite statute prevails." *Id.*

*Foltz* is of no assistance to Appellants, as there is no irreconcilable discord between section 660.285.1 and sections 475.060 and 475.061.1. All section 660.285.1 says is that the Director or his or her designee may initiate proceedings under Chapter 475 if the Director or his or her designee "determines after an investigation that an eligible adult is unable to give consent to receive protective services and presents a likelihood of serious physical harm[.]" It does not say that those are the *only* circumstances under which the Director or a designee thereof may initiate Chapter 475 proceedings, or that the Director or designee is not a "person" under sections 475.060 and 475.061.1 unless the investigation-related conditions of section 660.285.1 are also met. Thus, we cannot agree with Appellants that section 660.285.1 deprives a natural person who files a petition seeking the appointment of a guardian or conservator of the authority to file the petition under sections 475.060 and 475.061.1 merely because he or she may have filed the petition as a designee of the Director and the investigation did not result in an explicit determination that a particular eligible adult's situation presented a likelihood of serious physical harm.

To adopt Appellants' position would be to hold that the phrase "any person" in sections 475.060 and 475.061.1 actually means "any person except one who is acting as a designee of the Director of the Missouri Department of Health and Senior Services where the investigation-related provisions of section 660.285.1 have not been met." We decline to undertake this exercise in judicial interpolation, as it is not required by the language of section 660.285.1 and it is entirely reasonable to harmonize the statutes by holding, as we have, that the phrase "any person" as used in sections 475.060 and 475.061.1 means exactly that— every natural person or corporation, without limitation or restriction. Point denied.

■■■ In Point II, Appellants argue that the probate court lacked subject matter jurisdiction to enter its final judgment of incapacity and disability and order appointing a guardian and conservator because the petition was fatally defective in that it (1) was not verified as required by section 472.080.1; and (2) did not aver Ruth's age; her parents' names, ages and addresses and whether they are living or dead; and the reasons why the appointments were sought, as required by sections 475.060 and 475.061.1. We disagree.

Section 472.080, which has been in effect in its current form since January 1, 1981, and is made applicable to guardianships and conservatorships by section 475.020, provides:

1. Except as otherwise specifically provided in this code or by supreme court rule, every document filed with the court under this code, including but not limited to applications, petitions, claims and demands for notice, shall be signed by or on behalf of the petitioner or claimant, and shall contain a statement that it is made under oath or affirmation and that its representations are true and

correct to the best knowledge and belief of the person signing same, subject to the penalties of making a false affidavit or declaration.

2. No defect of form or substance in any document invalidates any proceedings after judgment on the document.

The record shows that although she signed it, the petition filed by Smith was not verified as required by section 472.080.1. It also shows that Appellants brought this issue to the probate court's attention by way of pretrial objections to the petition and a motion to dismiss. Although Appellants claim that Smith's failure to file a verified petition deprived the probate court of subject matter jurisdiction to adjudicate it, they cite no authority whatsoever for this proposition, nor have we been able to find any.

The reason for this dearth of relevant authority is found in section 472.080.2, which states that "[n]o defect of form or substance in any document invalidates any proceedings after judgment on the document." Application of this provision is best demonstrated by a review of existing case law.

In *Estate of Basler v. Delassus,* 690 S.W.2d 791 (Mo. banc 1985), which involved a claim against a decedent's estate, our Supreme Court applied section 472.080.2, RSMo 1978. *Id.* at 795 n.4. The claim was not verified. *Id.* at 793. The administrator ad litem and the claimant negotiated a compromise settlement, to which two devisees objected. *Id.* Nonetheless, the probate court approved the settlement. *Id.* The objecting devisees ap-

pealed, and one of their attacks on the settlement was that the claim from which it arose was not verified. *Id.* at 795.[6] The Missouri Supreme Court declared this objection to be "no serious obstacle" to affirming the probate court's judgment approving the compromise settlement. *Id.* The Court explained: "The absence of verification is effectively cured by the judgment following the hearing, approving the compromise." *Id.*

To support that holding, the Court cited two authorities. First, it cited section 472.080.2, RSMo 1978, which read: "No defect of form or substance in any petition, nor the absence of a petition, invalidates any proceedings after judgment on the application." *Id. n. 4.*[7] The Court also cited *In re Estate of Anderson,* 544 S.W.2d 35 (Mo.App. W.D.1976). *Id.* In *Anderson,* which was a discovery of assets proceeding, the appealing defendants complained that the "case went to trial without a verified petition." 544 S.W.2d at 37, 42. Relying on section 472.080.2, RSMo Supp. 1973, this court held, *inter alia,* that "any defect in the verification has been cured by judgment." *Id.* at 42.

In *Estate of Wilson,* 938 S.W.2d 607 (Mo.App. S.D.1997), the Southern District followed the Missouri Supreme Court's lead in *Basler.* Like *Basler, Wilson* involved an unverified claim against a decedent's estate. *Id.* at 609. Prior to trial, the guardian ad litem for Wilson's minor heirs filed a motion requesting that the probate court dismiss the claim, arguing that because the petition was unsigned and unverified, the court had no jurisdiction to consider it. *Id.* The probate court never-

---

**6.** The Court's opinion does not make it clear whether the objecting devisees raised the issue of lack of verification before or after trial and judgment.

**7.** That version is the same as the version in RSMo 2000 (quoted *supra* ) except that the

phrase "petition, nor the absence of a petition" in the 1978 version has been replaced by the single word "document" in the 2000 version, and the word "application" has been replaced by with the word "document."

theless denied the motion to dismiss. *Id.* Thereafter, the claimants and Wilson's personal representative entered into a stipulation compromising the claim. *Id.* After an evidentiary hearing, the probate court entered an order approving the compromise. *Id.* at 610. The minor heirs appealed, contending that the probate court erred in approving the compromise claim against the estate because the claim was neither signed or verified in that these were statutory prerequisites for the court to have jurisdiction. *Id.*

The Southern District disagreed, noting that "[w]hile there may be some measure of logic in Appellants' argument, it fails to acknowledge subsection 2 of 472.080, RSMo 1994, a part of the probate code." *Id.* at 611.[8] After discussing the Missouri Supreme Court's holding in *Basler*, which it found to be the last controlling decision of the Court on the jurisdictional claim raised by the appellants, the Southern District held that it "must honor *Basler's* holding that by reason of § 472.080.2, RSMo 1978, the absence of verification of a claim against a deceased's estate was cured after judgment." *Id.* at 611–12. The Southern District concluded:

> *Basler*, coupled with the version of § 472.080 in RSMo 1994 . . . persuades us that we would err if we held, at this stage of the dispute (after the trial court has heard evidence and entered an order approving the compromise of [the] claim), that the trial court lacked jurisdiction to enter the order because of the flaws in the claim. . . .

*Id.* at 612. It therefore proceeded to deny the minor heirs' point relied on as lacking merit. *Id.* Thus, the court in *Wilson* held even though a pretrial objection to the form of the claim had been made, any

defect as to verification was cured once evidence was heard and a judgment was entered.

In their reply brief, Appellants acknowledge the holdings in *Basler, Anderson,* and *Wilson* but invite us not to apply them here since they did not specifically involve guardianship or conservatorship proceedings. We decline that invitation, noting that *Basler* was a decision of our Supreme Court. Furthermore, *Wilson* clearly involved the same sort of pretrial jurisdictional objections raised by Appellants in this case, and all three cases are logically sound interpretations of the plain language of section 472.080.2. Accordingly, we conclude that pursuant to section 472.080.2, the verification provision of section 472.080.1 is not jurisdictional and any such technical defects may be cured by judgment.

■ Appellants also argue that the petition was fatally defective in that it did not aver Ruth's age; her parents' names and addresses and whether they are living or dead; and the reasons why the appointments were sought, as required by sections 475.060 and/or 475.061.1.

As relevant here, sections 475.060(1), (4), and (10) provide that a petition seeking the appointment of a guardian for an incapacitated person "shall state" the "age" of the incapacitated person; the "name and address of the parents of . . . the incapacitated person and whether they are living or dead"; and the "reasons why the appointment of a guardian is sought." Also, section 475.061.1 states that a petition seeking the appointment of a conservator of the estate of a disabled person "shall contain the same allegations as are set forth in subdivisions (1) . . . and (10) of section

---

8. The 1994 version of section 472.080.2 is identical to that in RSMo 2000, which is at issue in this appeal.

475.060 with respect to the appointment of a guardian for an incapacitated person[.]" Meanwhile, section 475.061.2 provides that, in a combined petition, the "allegations need not be repeated." Unlike the verification provision of section 472.080.1, these pleading requirements have been held to be subject-matter jurisdictional in nature. *See In re Dugan,* 309 S.W.2d 145, 148–49 (Mo.App. S.D.1957); *In re Werner,* 737 S.W.2d 761, 763–65 (Mo.App. W.D.1987); *In re Flair,* 44 S.W.3d 444, 449, 452–53 (Mo.App. W.D.2001).

Turning first to Appellants' claim that the petition did not plead Ruth's "age" as required by sections 475.060(1) and 475.061.1, the record shows that Paragraph 1 specifically averred that Ruth's date of birth was "6/19/12," from which her age could easily be calculated by the probate court and the parties. Although evidence was presented at trial that Ruth's actual date of birth was actually one year later (June 19, 1913), Appellants' argument that the statutes "require an averment of her *correct* age" is entirely specious and unsupported by any authority. *See generally State ex rel. Mo. Dep't of Soc. Servs. v. Roper,* 174 S.W.3d 563, 566–68 (Mo.App. W.D.2005).

Appellants also claim that the petition was defective since it did not list the "name and address" of Ruth's parents, as well as whether "they are living or dead," as required by section 475.060(4). Aside from the glaringly obvious fact that, if alive, Ruth's parents would both have to have been well over 100 years old, this is of no legal consequence because Smith's petition was aided by Appellants' own subsequently filed counter-petition for guardianship and conservatorship. The Missouri Supreme Court addressed a similar issue in *Johnson v. Estate of Girvin,* 414 S.W.2d 245 (Mo. banc 1967), which was a

probate proceeding against a decedent's estate for recovery of the value of labor and materials furnished by a contractor to the decedent prior to his death. *Id.* at 247. The defendant (the estate's executrix) argued that the contractor's petition was so deficient that the probate court lacked subject matter jurisdiction to entertain it. *Id.* at 248. Our Supreme Court observed that "[w]hen the claim was first filed, at a time when all details should have been fresh in the minds of the various witnesses, the estate made no objection to the form of the claim or challenge to the jurisdiction of the court, but instead met the attack head on, with a general denial together with a counterclaim which showed full knowledge of the" nature of the dispute. *Id.* at 249.[9] The Court then pointed out that despite this, "defendant is asking us to rule the claim is so defective it was a nullity and the court obtained no jurisdiction." *Id.*

The Court refused to do so, holding that "the statement of a claim in probate court may be aided by an answer or counterclaim, and we think that rule is applicable here." *Id.* (internal citation omitted). The Court went on to explain:

When the claim, answer and counterclaim are considered together it is clear the claim involves the construction of the incinerator and related items. Even at common law, where the rules of pleading were rigid, an omission to state a material fact would be obviated if the pleading of the opposite party supplied the lack, under the rule known as 'express aider.' The rule has continued to be used in this state. Here the claim stated a definite amount and disclosed it was 'on account of labor and materials furnished.' Although the claim did not specify when or where the work was

**9.** The record shows that this is essentially what happened in the case *sub judice.*

done or for what purpose or at whose request, the answer and counterclaim show the executrix was under no misapprehension as to what transactions were involved and under these circumstances we are not willing to hold the statement was so deficient as not to give the court any jurisdiction.

*Id.* at 249–50 (internal citations omitted).

Likewise, here, Appellants filed their own Petition for Appointment of Guardian and Conservator on December 12, 2003. That petition contained the very allegations about which Appellants now complain (*i.e.,* Ruth's correct age and date of birth and a statement that her parents were both deceased). As in *Johnson,* there is no doubt that Appellants (as well as the probate court) were under no misapprehension as to which interested individuals were alive and involved and what relief was being sought. Following *Johnson,*[10] we hold that under these circumstances the petition was not so deficient as to deprive the probate court of subject matter jurisdiction to entertain it.

Finally, Appellants argue that the petition was fatally defective in that it did not aver the reasons why the appointment of a guardian and conservator was being sought, as required by sections 475.060(10) and 475.061.1. This contention is refuted by the record, which shows that Paragraph 1 of the petition alleged that Ruth was unable, by reason of dementia, "to receive and evaluate information to communicate decisions to such and [sic] extent that [she] lacks the capacity to meet her essential requirements for food, clothing, shelter, safety, or other care such that serious physical injury, illness, or disease is likely to occur." Smith further pled, in Para-

graphs 2 and 3 of the petition, that due to her condition as averred in Paragraph 1, Ruth "lacks the ability to manage her financial resources" on her own and "is unable to meet her essential daily needs of living." These allegations were more than sufficient to meet the pleading requirements of sections 475.060(10) and 475.061.1 as to the reasons the appointment of a guardian and conservator was being sought. Point denied.

■ In Point III, Appellants contend that the probate court erred in exercising *in personam* jurisdiction over Ruth because the Notice of Hearing the probate court issued to Ruth was improperly served in that it was left with "her social services person" rather than Ruth herself, who was incoherent at the time of service. We disagree.

■ The probate court ruled, *inter alia,* that Appellants did not have standing to challenge its assumption of personal jurisdiction over Ruth due to insufficient service of process on her because that issue could only be raised by Ruth, whose attorney had expressly waived any possible defects in service. The general rule, which applies here, "is that the issue of defective service of process may be raised only by the one on whom the attempted service was made and one defendant, in the absence of prejudice to his own interests, is not entitled to urge defects in service on a co-defendant." *Superior Outdoor Adver. Co. v. State Highway Comm'n,* 641 S.W.2d 480, 483 (Mo.App. S.D.1982). As Appellants never even alleged (much less demonstrated) such prejudice and they were not even co-respondents in this action but merely interested

---

**10.** Appellants argue that *Johnson* is inapposite because they voluntarily dismissed their counter-petition without prejudice on January 21, 2004. *Johnson* makes it clear, however, that the rule of express aider comes into play as soon as an answer or counterclaim is filed with the probate court.

persons, the probate court's ruling that they lacked standing to challenge service of process on Ruth was entirely correct. Point denied.

 In Point V, Appellants contend that the probate court erred in adjudicating the petition because venue did not lie in Randolph County in that Ruth was actually domiciled in Monroe County at the time the petition was filed. They argue that Ruth effectively changed her domicile to Monroe County on June 28, 2002. A brief recitation of additional facts is necessary for a proper understanding of this contention.

Ruth was born on June 19, 1913. She married Clyde Duvall ("Clyde") on September 1, 1940. They had no children. Ruth and Clyde built a home at 539 Fulton Avenue in Moberly (Randolph County), Missouri, where they lived together for 40 years. Clyde died on August 30, 1994, and Ruth continued living at her 539 Fulton Avenue home, where she remained until serious and progressive health problems led to her admission to a series of nursing homes.

Lynn, who is a self-employed life insurance and real estate salesman, was Clyde's nephew and Ruth's nephew-in-law. Lynn and his wife, Connie, reside on a 10–acre lot located at 11168 Highway 24, Madison, Missouri, in Monroe County. Before entering the nursing homes in which she would spend the rest of her life, Ruth would sometimes visit or spend a few days at their residence if no one was available to spend the night with her in her own home. However, she always thought of the Fulton Avenue house in Randolph County as her permanent home.

Ruth, and presumably her husband also, had named Lynn as her attorney in fact pursuant to a General Durable Power of Attorney as early as 1993. In June 2002, while Ruth (who was nearly ninety years old) was in a nursing home and her health and mental capacity had deteriorated to such an extent it is doubtful she had sufficient mental capacity to knowingly execute legal documents or even to express her wishes due to severe expressive aphasia, Lynn undertook to have a Revocable Trust Agreement, as well as a deed and other documents, prepared on her behalf. On or about June 28, 2002, Ruth signed a Revocable Trust Agreement purporting to establish the M. Ruth Duvall Trust, with her as settlor and Lynn as the trustee. Ruth also signed a quitclaim deed transferring her interest in her Fulton Avenue home to Lynn. This home was valued at $57,000, and Ruth had owned it free and clear of any liens. Also on June 28, 2002, Lynn and Connie executed a quitclaim deed granting the Trust a 98% interest in their home at 11168 Highway 24 in Monroe County. The market value of this home was $350,000. The Trust, therefore, became the owner of a 98% interest in Lynn and Connie's $350,000 Monroe County residence. In essence, the 98% interest in the Monroe County house was exchanged for Ruth's Randolph County home, her car, and all personal property she owned at the time—even though, under the terms of the Trust, Ruth had to be adjudged competent in order to make any claim on or against this interest.

 Thus, the crux of Appellants' argument in Point V is that once Ruth deeded away her Randolph County home to Lynn and assumed, via the trust, a 98% interest in his Monroe County home, she changed her domicile from Randolph County to Monroe County. "Venue refers to the situs in which a court of competent jurisdiction may adjudicate an action." *State ex rel. Elson v. Koehr*, 856 S.W.2d 57, 59 (Mo. banc 1993). Venue in Missouri is determined solely by statute, and the propriety of venue is generally determined

as the case stands when first brought. *State ex rel. Palmer v. Goeke,* 8 S.W.3d 193, 195 & n. 1 (Mo.App. E.D.1999). "Because improper venue is a fundamental defect, a court that acts when venue is improper acts in excess of its jurisdiction." *State ex rel. SSM Health Care St. Louis v. Neill,* 78 S.W.3d 140, 142 (Mo. banc 2002).

■ Section 475.035 governs venue in actions for the appointment of a guardian or conservator. In particular, section 475.035.1(1) provides that such actions may properly be brought "[i]n the county in this state where the minor or alleged incapacitated or disabled person is domiciled[.]" Where there is a dispute over the domicile of a person alleged to be incapacitated or disabled, the location of his or her domicile is "a question of fact . . . which it [is] the duty of the probate court to determine." *State ex rel. Holthaus v. Holtcamp,* 218 Mo.App. 440, 277 S.W. 607, 608 (E.D.1925) (interpreting statutory predecessor to section 475.035); *see also Hamilton v. Henderson,* 232 Mo.App. 1234, 117 S.W.2d 379, 382 (W.D.1938). Thus, where its adjudicative authority turns upon such a factual issue, "the probate court has the right to determine its jurisdiction from the facts before it[.]" *Holthaus,* 277 S.W. at 608.

■ The petition alleged that Ruth was domiciled in Randolph County, and the probate court exercised jurisdiction pursuant to section 475.035.1(1), finding that Ruth "is domiciled in Randolph County, Missouri."

In order to effectuate a change of domicile it is necessary that there shall be actual personal presence in the new place and also the present intention to remain there, either permanently or for an indefinite time, without any fixed or certain purpose to return to the former place of abode. The fact of physical presence and the intention must concur, and if they do so, even for a moment, the change of domicile takes place.

*In re Estate of Toler,* 325 S.W.2d 755, 759 (Mo.1959); *see also In re Estate of Potashnick,* 841 S.W.2d 714, 720 (Mo.App. E.D. 1992). "The question of intent is to be gathered largely from the acts and utterances of the person whose domicile is under question, and the declarations of the person made before, at, and after the time the domicile is in dispute may be considered." *Toler,* 325 S.W.2d at 760 (internal citation omitted).

The evidence presented at trial on the issue of Ruth's domicile makes it abundantly clear that Ruth never changed her domicile to Monroe County. To begin with, as noted *supra,* the full extent of Ruth's presence in Monroe County consisted only of visiting and spending a few days at Lynn's home if no one was available to spend the night with her in her home. In fact, as far as we can tell from the transcript, there was no evidence that Ruth ever even set foot in what Appellants claim was her "new domicile" after the events of June 28, 2002. Instead, she spent the rest of her life in nursing homes, whose bills Lynn had repeatedly ignored and refused to pay for months on end. Moreover, Ruth never expressed a present intent to remain in Lynn's Monroe County home indefinitely, or to make that location her permanent residence. To the contrary, the probate court was presented with substantial evidence that by June 28, 2002, the date of the transactions whereby Ruth's Trust acquired a 98% interest in Lynn's home in Monroe County, Ruth's condition had worsened to the point where she could no longer express her wishes, had difficulty in understanding, and would not have understood the effect of deeding houses, trading land, establishing a trust, or engaging in other complex financial transactions. Furthermore, there was evidence that when asked by Smith in October 2002, Ruth did not know that her home at 539

Fulton Avenue in Moberly, Randolph County, had been sold (when, in fact, Lynn had sold it to his son Stephen on August 28, 2002), *but thought that she still owned it and that Lynn was taking care of it for her.* On the basis of this evidence, the probate court could properly have concluded that Ruth could not and did not form any intent to make Lynn's Monroe County house her new domicile.

Accordingly, the probate court correctly determined that Ruth was domiciled in Randolph County when the petition was filed on July 11, 2003, and that venue was appropriate there. Point denied.

As the probate court had both personal and subject matter jurisdiction to enter its final judgment and order declaring Mildred Ruth Duvall to be totally incapacitated and disabled and appointing the Public Administrator of Randolph County as the guardian of her person and the conservator of her estate, the judgment is affirmed.

All concur.